**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
In re:                                                  :    Chapter 11
                                                        :
DNIB UNWIND, INC.                                       :    Bankruptcy Case No. 16-11084 (BLS)
(f/k/a BIND THERAPEUTICS, INC.),[1]                     :
                                                        :    Adversary Proceeding No. 17-50882 (BLS)
                 Post-Effective Date Debtor.            :
                                                        :
                                                        :
                                                        :
------------------------------------------------------- x
B.E. CAPITAL MANAGEMENT FUND LP, on                     :
behalf of itself and all others similarly situated,     :
                                                        :    Case No. 17-945-GMS
                 Plaintiff/Appellant,                   :
                                                        :    Related to D.I. 4
             v.                                         :
                                                        :
GEOFFREY L. BERMAN, in his capacity as                  :
Trustee of the Liquidating Trust of DNIB                :
Unwind, Inc. (f/k/a Bind Therapeutics, Inc.),           :
                                                        :
                 Defendant/Appellee.                    :
                                                        :
------------------------------------------------------- x
```

**OPPOSITION TO B.E. CAPITAL MANAGEMENT LLP'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND A STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007**

---

[1]      The Post-Effective Date Debtor's address is c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, CA  90071. The last four digits of the Post-Effective Date Debtor's U.S. federal tax identification number is 6148.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND.......................................................................................... 4

ARGUMENT ......................................................................................................................... 5

I.        BEC'S MOTION SUFFERS FROM FATAL JURISDICTIONAL DEFECTS ............... 5

II.       LEGAL STANDARD FOR INJUNCTIVE RELIEF ...................................................... 6

III.     BEC IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS................. 7

        A.      The Trustee is Permitted to Require Shareholders to Provide a Completed Form W-8 or W-9 Under the Plain Language of the Plan, the Confirmation Order and the Liquidation Trust Agreement ........................................................... 8

        B.      The Trustee is Permitted to Require Nominees of Shareholders to Provide the Equity Certification Form ................................................................................ 11

IV.     BEC WILL NOT SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF...................................................................................................................... 13

V.      THE BENEFICIARIES OF THE DNIB LIQUIDATION TRUST WILL SUFFER HARM IF INJUNCTIVE RELIEF IS GRANTED ......................................................... 14

VI.     GRANTING INJUNCTIVE RELIEF TO BEC DOES NOT SERVE THE PUBLIC INTEREST ................................................................................................... 15

VII.    BEC IS NOT ENTITLED TO A STAY PENDING APPEAL ....................................... 16

VIII.   IF THE COURT GRANTS INJUNCTIVE RELIEF OR A STAY PENDING APPEAL, BEC SHOULD BE REQUIRED TO POST A BOND.................................... 17

CONCLUSION..................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACC Bondholder Group v. Adelphia Commc'ns Corp.*
*(In re Adelphia Commc'ns Corp.),*
361 B.R. 337 (S.D.N.Y. 2007) ..................................................................................18

*Acierno v. New Castle County,*
40 F.3d 645 (3d Cir. 1994) .....................................................................................13

*Adams v. Freedom Forge Corp.,*
204 F.3d 475 (3d Cir. 2000) .....................................................................................7

*Bepco, L.P. v. 15375 Mem'l Corp. (In re 15375 Mem'l Corp.),*
No. 06-10859 (KG), 2009 WL 393948 (D. Del. Feb. 18, 2009) ............................17

*In re BGI, Inc.,*
504 B.R. 754 (S.D.N.Y. 2014) ..................................................................................6

*Bieros v. Nicola,*
857 F. Supp. 445 (E.D. Pa. 1994) .............................................................................7

*Calabria v. CIT Consumer Grp. (In re Calabria),*
407 B.R. 671 (Bankr. W.D. Pa. 2009) .....................................................................15

*CareMatrix Corp. v. Czehowski (In re CareMatrix Corp.),*
306 B.R. 478 (Bankr. D. Del. 2004) .........................................................................6

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
772 F.2d 972 (D.C. Cir. 1985) ................................................................................16

*Dellums v. Smith,*
577 F. Supp. 1456 (N.D. Cal. 1984) .......................................................................16

*ePlus, Inc. v. Katz (In re Metiom, Inc.),*
318 B.R. 263 (S.D.N.Y. 2004) ...............................................................................16

*In Re F.G. Metals, Inc.,*
390 B.R. 467 (Bankr. M.D. Fla. 2008) ...................................................................16

*In re Genesis Health Ventures, Inc.,*
367 B.R. 516 (Bankr. D. Del. 2007) ..................................................................16, 17

*Jalali v. Pierce Associates, Inc.,*
No. WDQ-11-1069, 2011 U.S. Dist. LEXIS 89491 (D. Md. Aug. 11, 2011) ..........6

*Kos Pharms, Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004)................................................................................13

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*,
600 F.2d 1189 (5th Cir. 1979) ............................................................................18

*Republic of Philippines v. Westinghouse Elec. Corp.*,
949 F.2d 653 (3d Cir. 1991)................................................................................16

*In re Rivera*,
No. 5:15-cv-04402-EJD, 2015 U.S. Dist. LEXIS 151860
(N.D. Cal. Nov. 9, 2015)..................................................................................5, 6

*Schroeder v. New Century Liquidating Trust*
*(In re New Century TRS Holdings, Inc.)*,
No. 07-10416 (KJC), 2009 WL 1833875 (D. Del. June 26, 2009).........................17

*Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*,
No. 08-10375 (JMP), 2008 U.S. Dist. LEXIS 19801 (S.D.N.Y. Mar. 7, 2008) ....................18

*Turner v. Frascella Enters., Inc. (In re Frascella Enters., Inc.)*,
388 B.R. 619 (Bankr. E.D. Pa. 2008) ................................................................16

*Uniflex, Inc. v. Endurapak, Inc. (In re Uniflex, Inc.)*,
319 B.R. 101 (Bankr. D. Del. 2005) ....................................................................6

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012)..............................................................................6, 17

*In re Wymer*,
5 B.R. 802 (9th Cir. B.A.P. 1980)........................................................................6

## STATUTES

26 U.S.C. § 6012(a)(4)..........................................................................................9

28 U.S.C. § 158(a)(1)............................................................................................5

## RULES

Fed. R. Bankr. P. 8005.........................................................................................16

Fed. R. Bankr. P. 8007.........................................................................................17

Fed. R. Bankr. P. 8007(a)(1).................................................................................5

Fed. R. Bankr. P. 8007(b)(2)(A)-(B) ....................................................................5

Fed. R. Civ. P. 65................................................................................................5

iii

Fed. R. Civ. P. 65(c) ....................................................................................................................18

## REGULATIONS

26 CFR § 1.671-4(a) ...............................................................................................................3, 9

26 CFR § 1.671-4(b)(3) ..........................................................................................................3, 9

26 CFR § 1.671-4(b)(3)(ii)(A).....................................................................................................9

26 CFR § 301.6109-1(c) ..............................................................................................................9

The Trustee (the "**Trustee**") of the DNIB Liquidation Trust (the "**Trust**") hereby submits this Opposition (the "**Opposition**") to *B.E. Capital Management LLP's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and a Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* [Docket No. 4] (the "**Motion**")[1] filed by B.E. Capital Management Fund LP ("**BEC**") on July 25, 2017.  In support of the Opposition, the Trustee relies upon and incorporates herein by reference the Declaration of Geoffrey L. Berman (the "**Berman Decl.**"), attached hereto as Exhibit A, and the Declaration of Christina Pullo (the "**Pullo Decl.**"), attached hereto as Exhibit B.  In further support of the Opposition, the Trustee, by and through his undersigned counsel, respectfully states as follows:

## PRELIMINARY STATEMENT

1.     BEC's Motion requests the *same relief* as the Bankruptcy Court TRO Motion currently pending before the Bankruptcy Court.  Indeed, both from this Court and separately from the Bankruptcy Court, BEC seeks an order enjoining the Trustee, through the final adjudication of a separate motion filed by BEC in the Bankruptcy Court in March 2017,[2] from:

> (i) conditioning further distributions to DNIB shareholders on the receipt of required tax documents, consisting of a Form W-8 or W-9 (the "Tax Forms") and an equity certification form (the "Equity Certification Form")[3] to be completed by the nominees of DNIB shareholders (the "Nominees") who held their shares in street name (collectively, the "Tax Documents"); and

> (ii) making any further distributions to DNIB shareholders.

---

[1]     On July 14, 2017, BEC filed a nearly identical motion [Adv. Docket Nos. 3, 4] (the "**Bankruptcy Court TRO Motion**") in the United States Bankruptcy Court for the District of Delaware.  A hearing on the Bankruptcy Court TRO Motion has been scheduled for August 3, 2017, the day following the Trustee's submission of this Opposition.

[2]     On March 22, 2017, BEC filed *B.E. Capital Management Fund LP's Motion for Determination That the Trustee's Conditioning of Distributions to Shareholders on Their Submission of Equity Distribution Form Violates the Plan, or, Alternatively, is an Impermissible Plan Modification* [Bankr. Docket No. 615] (the "**Original Motion**") in the Bankruptcy Court.

[3]     A copy of the Equity Certification Form is attached as Exhibit B to Exhibit C to the Motion.

2.      BEC's current Motion follows from its Original Motion, which sought a determination by the Bankruptcy Court that the Trustee's conditioning of distributions to shareholders upon receipt of the Tax Documents is impermissible under the Debtors' confirmed Plan.[4]  The Bankruptcy Court denied the Original Motion, and BEC has appealed the Bankruptcy Court's Order.  BEC's concurrent filing of its Complaint [Bankr. Docket No. 699], which was amended on July 31, 2017 [Adv. Docket No. 14] (the "**Amended Complaint**"), the Bankruptcy Court TRO Motion and its Motion here – each seeking essentially the same injunctive relief – constitutes an impermissible attempt to take a second, and third, bite at the apple.

3.      Aside from the procedural defects from which its Motion suffers, BEC fails to demonstrate that it is entitled to the relief it seeks.  To obtain the extraordinary relief it now requests, BEC must establish (i) that it is reasonably likely to succeed on the merits of its claims; (ii) it is likely to experience irreparable harm without an injunction, (iii) the Trust and its beneficiaries will not suffer irreparable harm as a result of such injunction; and (iv) the injunction serves the public interest.  BEC is unable to establish any of these requirements.

4.      First, BEC is not likely to prevail on its claim that the Trustee is without authority to make distributions directly to shareholders and to require shareholders to provide the Tax Documents because:

- the Bankruptcy Court has already rejected BEC's position on these issues in the Order;

- the Plan explicitly provides that the Trustee may condition future distributions to shareholders upon receipt of a completed Form W-8 or W-9;

---

[4]     On September 26, 2016, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Bankr. Docket No. 457] (the "**Confirmation Order**," attached to the Motion as Exhibit B) confirming the *Debtors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Bank. Docket No. 415] (the "**Plan**," attached to the Confirmation Order as Exhibit A).  No appeals were taken of the Confirmation Order and the Plan went effective on October 11, 2016.  (Berman Decl. at ¶ 4.)

- the Trustee has the discretion to administer the Plan and to make distributions to stakeholders, including shareholders, pursuant to the Plan;

- both 26 CFR §§ 1.671-4(a) and 1.671-4(b)(3) require the Trustee to provide tax identification numbers (which are included in the Tax Forms) for each shareholder to the IRS for tax reporting purposes;

- the Equity Certification Form is required to enable the Trustee to identify which shareholders provided a completed Form W-8 or W-9 and, therefore, which shareholders are entitled to future distributions under the Plan and the number of shares each such shareholder held as of the August 30, 2016 distribution record date provided for in the Plan (the "**Distribution Record Date**");

- the Depository Trust Company ("**DTC**"), the Trust's transfer agent, has confirmed that it will not make any further distributions to DNIB shareholders if the distribution is made to less than all shareholders; and

- BEC has provided no evidence, including any expert testimony, to support its allegation that the Tax Forms are not required and no viable alternative to the Equity Certification Form.

5.      Second, BEC will not suffer irreparable harm (or any harm) if injunctive relief is not granted because BEC, as a shareholder of record as of the Distribution Record Date,[5] has already provided the requisite Tax Documents to the Trust and, therefore, will receive all future distributions under the Plan regardless of when they are made.  In addition, BEC is not a proper representative of a class of shareholders that have not yet submitted the Tax Documents and it lacks standing to seek injunctive relief on their behalf.

6.      Third, DNIB shareholders will suffer harm if injunctive relief is granted because it will delay the timing of, and reduce the amount of, the distributions to which they are entitled.

7.      Fourth, granting the injunctive relief sought by BEC does not further the public interest as it would undermine the paramount public policy of the finality of confirmation orders

---

[5]      In addition to the 300,000 shares of DNIB stock BEC claims to have held as of the Distribution Record Date, BEC allegedly purchased over 1 million additional shares of DNIB stock *after* the Distribution Record Date and *after* the Confirmation Order was entered.  *See* May 31, 2017 Hearing Transcript ("**5/31 Hearing Tr**.," attached as Exhibit D to the Motion) at p. 55:19-23.

and the policy favoring the efficient administration of bankruptcy estates.  Accordingly, and as discussed further below, the injunctive relief sought in the Motion must be denied.

8.      BEC is not entitled to a stay pending appeal for all of these reasons, as well. However, if the Court determines that a stay pending appeal or injunctive relief is warranted, BEC should be required to post a bond in the amount of at least $250,000.00.

## PROCEDURAL BACKGROUND

9.      On March 22, 2017, BEC filed the Original Motion in the Bankruptcy Court. Pursuant to the Original Motion, BEC sought a finding that the requirement that the Nominees provide *the Equity Certification Form* within 180 days violated the Plan or was an impermissible Plan modification.  Over time, BEC's arguments morphed, including the addition of an argument that the requirement that all shareholders provide *a Form W-8 or W-9* also violated the Plan or was an impermissible Plan modification.  A hearing on the Original Motion was held on May 31, 2017 and, on July 13, 2017, the Bankruptcy Court entered in its *Memorandum Order Denying B.E. Capital Management Fund LP's Motion for Determination That the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or, Alternatively, is an Impermissible Plan Modification* [Bankr. Docket No. 694] (the "**Order**," attached to the Motion as Exhibit A).

10.      On July 14, 2017, BEC filed a *Notice of Appeal* of the Order [Bankr. Docket No. 696].  Also on July 14, 2017, BEC filed the Complaint and the Bankruptcy Court TRO Motion in the Bankruptcy Court – each seeking injunctive relief pending the final adjudication of BEC's appeal of the Order.  On July 20, 2017, BEC filed a notice [Adv. Docket No. 9] scheduling a hearing on the Bankruptcy Court TRO Motion for August 3, 2017 in the Bankruptcy Court. Then, on July 25, 2017, BEC filed the Motion at issue here, which seeks the very same injunctive relief sought in the Bankruptcy Court TRO Motion.

## ARGUMENT

## I.   BEC'S MOTION SUFFERS FROM FATAL JURISDICTIONAL DEFECTS

12.     BEC asserts that this Court has jurisdiction over the Motion pursuant to "11 U.S.C. § 158(a)(1) . . . Federal Rule 65 and Bankruptcy Rule 8007(b)."   (Motion at ¶ 8.) Presumably BEC intended to refer to 28 U.S.C. § 158(a)(1), which provides that district courts have jurisdiction "to hear appeals from final judgments, order and decrees."   However, the Motion is not an appeal of a final judgment, order or decree.   While Federal Rule of Civil Procedure 65 refers to injunctive relief, which is at issue in the Motion, the relief sought in the Motion ties to the permanent injunctive relief sought by BEC in the Amended Complaint, which is pending before the Bankruptcy Court.   There is no Complaint for injunctive relief filed by BEC pending before this Court.   For this reason alone, the Court should deny the Motion.

13.     Additionally, in concurrently filing this Motion as well as the Bankruptcy Court TRO Motion, BEC improperly attempts to bypass the Bankruptcy Court's consideration of its requested stay, needlessly causing extra work for both this Court and the Trustee.   Ordinarily, a motion seeking a stay pending appeal of a bankruptcy court's order must be brought first in the bankruptcy court.   *See* Fed. R. Bankr. P. 8007(a)(1).   Only if bringing the motion in the bankruptcy court is impracticable or if the bankruptcy court has failed to rule on the motion seeking a stay may the movant bring the motion to the district court before giving the bankruptcy court an opportunity to consider the relief sought.   *See* Fed. R. Bankr. P. 8007(b)(2)(A)-(B).   "A failure to seek emergency relief in the bankruptcy court is a critical defect and not often overlooked."   *In re Rivera*, No. 5:15-cv-04402-EJD, 2015 U.S. Dist. LEXIS 151860, at *5 (N.D. Cal. Nov. 9, 2015).   This staged process of presenting a request for a stay makes sense because "[t]he reviewing court should have the benefit of the learning of the lower court, which is more familiar with the parties, facts and legal issues."   *Id.* (internal quotation marks and citations

omitted).  Indeed, "district courts routinely dismiss motions for a stay pending appeal when stay relief is not first sought from the bankruptcy judge and the failure to do so is not adequately explained."  *Id.* (*quoting In re BGI, Inc.*, 504 B.R. 754, 761 (S.D.N.Y. 2014) (denying motion for stay)); *see also Jalali v. Pierce Associates, Inc.*, No. WDQ-11-1069, 2011 U.S. Dist. LEXIS 89491, *5-6 (D. Md. Aug. 11, 2011) ("[t]he failure to comply" with rules governing stays pending appeals, "by first seeking relief from the bankruptcy court 'weighs heavily' against a stay, and 'may be fatal' to the request.").

14.     In any event, even after the Bankruptcy Court rules on the Bankruptcy Court TRO Motion, that ruling may be disturbed only upon a finding that the Bankruptcy Court abused its discretion.  *See In re Wymer*, 5 B.R. 802, 808 (9th Cir. B.A.P. 1980) ("It is . . . important to the properly functioning bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed only in the event of error or abuse of discretion.").  A situation such as here, where the Bankruptcy Court promptly scheduled a hearing on the Bankruptcy Court TRO Motion – set for the day following the Trustee's submission of this Opposition, is plainly not the exception to the rule that ordinarily a motion for stay pending appeal must be heard first by the bankruptcy court.

## II.     <u>LEGAL STANDARD FOR INJUNCTIVE RELIEF</u>

15.     "A preliminary injunction should be granted only in ***extraordinary*** situations . . ." *Uniflex, Inc. v. Endurapak, Inc. (In re Uniflex, Inc.)*, 319 B.R. 101, 104 (Bankr. D. Del. 2005) (emphasis added); *see also CareMatrix Corp. v. Czehowski (In re CareMatrix Corp.)*, 306 B.R. 478, 485 (Bankr. D. Del. 2004) ("A preliminary injunction is an extraordinary and drastic remedy.") (citation omitted); *In re W.R. Grace & Co.*, 475 B.R. 34, 205-06 (D. Del. 2012) (a stay constitutes an "extraordinary remedy," to be granted in only limited circumstances where the moving party is able to satisfy its burden of demonstrating that the circumstances justify an imposition of a stay).  For a preliminary injunction to issue, BEC must show that:

> (1) [it is] likely to experience irreparable harm without an injunction and (2) [it is] reasonably likely to succeed on the merits.  A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require.  If relevant, the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest.

*Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) (citations omitted).[6]  To the extent this Court determines that it does have jurisdiction to consider the relief sought in the Motion, the present circumstances are not extraordinary and BEC cannot establish any of the requisite elements necessary to grant injunctive relief.

## III.     BEC IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

16.     Simply put, the limited information that the Trustee has requested be provided by DNIB shareholders and the Nominees is permissible under the Plan and required in order for the Trustee to comply with the Trust's tax reporting obligations and to be able to make future distributions to shareholders pursuant to the Plan.

17.     The Bankruptcy Court has already categorically ruled in the Trustee's favor on these issues and BEC should not be permitted to seek an end run around the Bankruptcy Court's Order and BEC's appeal of that Order by now seeking in its newly filed Amended Complaint to enjoin actions by the Trustee that the Bankruptcy Court has already ruled are permissible.

---

[6]     "The standards for a temporary restraining order are the same as those for a preliminary injunction."  *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa.  1994).

**A.     The Trustee is Permitted to Require Shareholders to Provide a Completed Form W-8 or W-9 Under the Plain Language of the Plan, the Confirmation Order and the Liquidation Trust Agreement**

18.     As per the terms of the Plan and the Liquidation Trust Agreement,[7] the Trustee may require that eligible shareholders return a completed Tax Form to the Trust by a date certain to receive distributions from the Trust.

19.     More specifically, Section XVI.J. of the Plan provides as follows:

> The Debtors or Postconfirmation Liquidating Trustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim or Allowed Equity Interest complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtors or Postconfirmation Liquidating Trustee make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtors or the Post-confirmation Liquidating Trustee and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors or the Post-confirmation Liquidity Trustee, or their respective property.[8]

20.     No one, including BEC, objected to this provision of the Plan.  As per the plain terms of the Plan, if a shareholder fails to return the completed Tax Forms within 180 days after the request by the Trustee is made, the shareholder forfeits any future distributions under the Plan.  Section 4.1(f) of the Liquidation Trust Agreement also explicitly authorizes the Trustee to request and obtain the Tax Forms from Trust beneficiaries.

21.     In early 2017, the Trust's accountant advised the Trustee that the Trust is required to provide to the IRS tax identification numbers for each beneficiary of the Trust, including all

---

[7]     The Liquidation Trust Agreement, dated October 11, 2016, by and among DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.), DNIB Subsidiary Corporation (f/k/a BIND Biosciences Security Corporation) (together, the "**Debtors**" or the "**Post-Effective Date Debtors**," as applicable), and the Trustee (the "**Liquidation Trust Agreement**") is attached as Exhibit A to the Plan.

[8]     Paragraph 3 of the Confirmation Order further provides that the Debtors are required to make all required withholding payments and to comply with all applicable tax laws with respect to any distributions.

shareholders entitled to a distribution pursuant to the Plan.  (Berman Decl. at ¶ 5.)  According to

the Trust's tax professionals:

- 26 U.S.C. § 6012(a)(4) requires the Trustee to file a Form 1041 on behalf of the Trust. *See also* 26 CFR § 1.671-4(a).[9]  Under the Form 1041 reporting method, the regulations require the Trust to report taxpayer identification numbers in accordance with the directions for Form 1041.  *See* 26 CFR 301.6109-1(c).  The instructions for Form 1041 provide that the Trust is required to include a statement attached to the Form 1041 showing the name, address and tax identification number of "the person(s) to whom the income is taxable" (*i.e.* each shareholder).  (Berman Decl. at ¶ 6, Exh. 1 at pp. 12-13.) There is nothing in the instructions to support BEC's assertion that the Trustee may instead "rely[] upon the Form W-9 provided by the Debtor's transfer agent" as the income of the Trust is not taxable to the transfer agent.  (Motion at fn. 5.)

- 26 CFR § 1.671-4(b)(3) requires, in the alternative, that the Trust file Forms 1099.  Under the 1099 reporting method, the Treasury Regulations similarly require the Trust to report all items of income paid to the Trust by all payors and to show "each grantor or other person treated as an owner of the trust as the payee."  26 CFR § 1.671-4(b)(3)(ii)(A).[10] (Berman Decl. at ¶ 6.)  While BEC argues that the Trust may instead comply with this alternative reporting requirement (Motion at fn. 5), it fails to explain how the Trust could identify each grantor of the Trust (*i.e.* each shareholder) without the information provided in the Equity Certification Form.

22.    Therefore, under either reporting method available to the Trustee, the tax

identification numbers of each individual DNIB shareholder (which are included on the Tax

Forms) are required for the Trust to satisfy its tax obligations.

23.    In order to facilitate fulfillment of the Trust's tax reporting requirements, on

February 7, 2017, the Trustee requested that all holders of DNIB shares holding in street name as

of the Distribution Record Date provide the completed Tax Forms prior to August 7, 2017

---

[9]    Pursuant to Recital G(ii) of the Liquidation Trust Agreement, the Trustee is required "to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a)."

[10]    BEC, which seemingly forgets that it retains the burden of proof on all elements of the Original Motion, has provided no evidence whatsoever from any tax professional regarding the tax requirements for a grantor trust.  Indeed, Mr. Braziel, Managing Director of BEC, testified at the hearing on the Original Motion in the Bankruptcy Court that he has not even consulted with an accountant on these issues.  *See* 5/31 Hearing Tr. at p. 57:23-25.  Instead, BEC only offers its attorney's lay opinion as to the Trust's tax reporting obligations and why BEC disagrees with the tax advice provided by the Trust's tax professionals.

[Bankr. Docket No. 590].  (Berman Decl. at ¶ 7.)  Instructions and blank Equity Certification Forms were provided to DTC to post on its Legal Noticing System accessible to the Nominees and to the Nominees to distribute to the beneficial holders of DNIB stock as of the Distribution Record Date.[11]  (Pullo Decl. at ¶ 4.)  Subsequently, on April 18, 2017, the Trustee filed a Status Report [Bankr. Docket No. 642], attached as Exhibit E to the Motion, reiterating the need for shareholders to provide the Tax Documents to the Trust.  The Status Report was disseminated to shareholders through DTC, the Nominees and Broadridge and was also described in the Trust's Form 8K publicly filed by the Trust on April 24, 2017.[12]  (Pullo Decl. at ¶ 5.)  Thus, adequate notice of the Tax Document requirement has been provided to shareholders on multiple occasions.  All shareholders are required to provide the Tax Forms in order to receive any future distributions (and are therefore not receiving disparate treatment, as BEC suggests).  All shareholders as of the Distribution Record Date are entitled to their pro rata share of the remaining assets in the Trust so long as they complete the required Tax Documents.

24.    BEC argues, without any evidentiary support and despite the multiple notices provided by the Trustee, that a "substantial number" of shareholders still did not receive notice that the Tax Documents are required and that a substantial number of shareholders who are aware of the reporting requirements have been unable to provide the requested Tax Documents to the Trust.  (Motion at ¶ 21(d).)    While BEC goes on to state that its principal, Thomas Braziel, "testified at length about the enormous difficulties a significant number of beneficial holders, including himself, encountered in complying with the document requests, the confusion

---

[11]    BEC is wrong in its assertion that the notice "does not instruct the nominees to forward the notice to individual shareholders nor, for that matter, to take any action at all." (Motion at ¶ 5(c)(i).)

[12]    While BEC argues that some shareholders may still not be aware of the requirement that they provide Tax Documents to the Trust, the Trustee has no other practical way to reach shareholders that held their shares in street name.

among nominees as to how to complete the Equity Distribution Form, the outright refusal of some nominees to complete that form, and the lack of notice to a substantial number of Distribution Record Date shareholders of the Trustee's form requirement" (*id.*), the truth is that Mr. Braziel actually testified at the hearing that he has **only** spoken with **three** other DNIB shareholders, Messrs. Furey, Ribe and Schneeberger[13] – each of whom, like BEC, have already completed and returned the Tax Documents to the Trust.[14] (Pullo Decl. at ¶ 6.) Moreover, BEC has provided no actual evidence of purported large-scale issues with providing the requested Equity Certification Forms because they do not exist. Indeed, as of August 1, 2017, the Trust has received Tax Documents from shareholders holding approximately 80% of all DNIB shares in existence as of Distribution Record Date and the Trustee expects additional Tax Documents to be provided during the next five days. (Pullo Decl. at ¶ 6.)

25. Finally, BEC argues that it would be a substantial injustice if even one shareholder forfeits its distributions due to its failure to provide the requested Tax Documents. However, this is not an unusual occurrence by any means. Indeed, 36 holders of allowed unsecured claims against the Debtors (25% of the total number of creditors holding allowed claims) have already forfeited their distributions under the Plan because they too failed timely to provide the Tax Forms required by Section XVI.J. of the Plan. (Berman Decl. at ¶ 8.)

## B. The Trustee is Permitted to Require Nominees of Shareholders to Provide the Equity Certification Form

26. Because most DNIB stock in existence on the Distribution Record Date was held in street name, the Trustee does not know the identity of each individual shareholder, nor does the Trustee know how many shares of DNIB stock each such holder owned as of the Distribution

---

[13] *See* 5/31 Hearing Tr. at p. 55:8-15.

[14] Joshua Horowitz (who filed a letter in support of the Original Motion [Bankr. Docket No. 624]) has also now provided completed Tax Documents to the Trust. (Pullo Decl. at ¶ 6.)

Record Date.   As a result, the Trustee required that all Nominees complete the Equity Certification Form.   Section 4.1(f) of the Liquidation Trust Agreement explicitly authorizes the Trustee to request and obtain "such other forms or information relating to the Liquidation Trustee's obligations to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distributee upon receipt of such forms or information."

27.    The Equity Certification Form requires that each Nominee provide the following limited information: (1) DTC participant name, number, contact name, contact number, email address, and authorized signature; (2) beneficial holder name and account number; and (3) number of shares of CUSIP 05548N 107 that were held by the Nominee for the indicated account as of the Distribution Record Date.  (Berman Decl. at ¶ 9.)   As the Bankruptcy Court so astutely observed in the Order, the requirement that the Equity Certification Form be provided is "at most a modest burden."  (Order at ¶ 8.)

28.    The specific information requested by the Trustee is easily accessible by the Nominees and the Trustee may request such information in the exercise of his discretion pursuant to the terms of the Plan and the Liquidation Trust Agreement.  If any shareholders do not provide the requested Tax Forms, they forfeit any future distributions under the Plan.  The Trustee needs to know the identity and number of shares held by the remaining shareholders that are still entitled to a recovery so that he can make future distributions to shareholders given that DTC has confirmed that it will *not* make any future distributions to less than all shareholders. (Pullo Decl. at ¶ 7.)

29.    BEC's argument that the Plan does not permit the Trustee to make distributions directly to shareholders fails.  First, the argument is based on a faulty reading of the Plan and Liquidation Trust Agreement – both of which provide the Trust with the discretion to administer

the Plan and make distributions in accordance therewith.   Pursuant to Section 2.2 of the

Liquidation Trust Agreement, the Trustee's authority includes "calculating and implementing

distributions to the Liquidating Trustee Beneficiaries in accordance with the Plan and

[Liquidation Trust Agreement]."

30.     Section X.K of Plan, cited by BEC in the Motion, provides that the Trustee shall

make distributions to holders of claims and shareholders in one of a number of different ways,

including (1) at addresses set forth on proofs of claim filed by creditors or proofs of interest filed

by shareholders; (2) at addresses set forth in any written notices of address change; (3) at the

address reflected in the Schedules *or* (4) through the transfer agent for BIND Equity Interests.  In

addition, Section 4.2 of the Liquidation Trust Agreement permits the Trustee to rely on its books

and records – which would include any tax information received from shareholders.  As such,

there is no support in the Plan, the Liquidation Trust Agreement or the Confirmation Order for

BEC's position that only DTC (and not the Trustee) may make distributions to shareholders

under the Plan.

**IV.     BEC WILL NOT SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF**

31.     "In general, to show irreparable harm a plaintiff must demonstrate potential harm

which cannot be redressed by a legal or an equitable remedy following a trial.  Economic loss

does not constitute irreparable harm[.]"  *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.

1994) (citations and quotations omitted).  Irreparable harm must be "of a peculiar nature, so that

compensation in money alone cannot atone for it."  *Kos Pharms, Inc. v. Andrx Corp.*, 369 F.3d

700, 727 (3d Cir. 2004) (quotations omitted).

32.     BEC asserts that the purpose of the Motion is "to prevent irreparable harm to

itself and other Distribution Record Date shareholders" that it claims would ensue if (i) the

Trustee is able to make future distributions directly to shareholders and (ii) shareholders that do not provide the Tax Documents forfeit future distributions.  In reality, the exact opposite would be true if the Motion is granted.  BEC itself will suffer *no* harm if the injunctive relief it seeks is not granted as it has timely provided its Tax Documents to the Trust and is already entitled to its pro rata share of all future distributions under the Plan based on the total number of DNIB shares it held as of the Distribution Record Date.

33.     To the extent BEC argues that it seeks injunctive relief on behalf of a class of shareholders that have not provided the requested Tax Documents, it lacks standing to represent a class to which it does not belong.  In fact, BEC will actually receive a higher recovery if the injunction it seeks is not granted and at least one shareholder forfeits its rights to a distribution under the Plan, as BEC would then receive a larger portion of the remaining Trust assets.  Because BEC's interests are completely divergent from the interests of shareholders that fail to provide the Tax Documents prior to the August 7 deadline, BEC is not an adequate representative of such class and may not seek relief on their behalf.

34.     Not only is BEC unable to show that a failure to issue injunctive relief immediately will cause irreparable harm to BEC, it cannot show that it will suffer *any harm* if the Motion is denied.

## V.     THE BENEFICIARIES OF THE DNIB LIQUIDATION TRUST WILL SUFFER HARM IF INJUNCTIVE RELIEF IS GRANTED

35.     Many DNIB shareholders that have already provided the Tax Documents to the Trust have expressed a great interest in receiving distributions pursuant to the Plan as soon as possible.  When BEC requested that the Trustee voluntarily agree to delay the making of further and final distributions under the Plan, the Trustee refused to do so because of the harm that such an unnecessary delay would cause to those shareholders who are entitled to a recovery and are

expecting a timely distribution.  In addition, the Trustee expects that further delays could cause the shareholders who are entitled to a further distribution to seek immediate relief from this Court or the Bankruptcy Court, which would require additional response from the Trustee and his counsel leading to a further depletion of Trust assets (in addition to the significant expenses that the Trust has already incurred in defending against BEC's baseless claims).  (Berman Decl. at ¶ 10.)

## VI.   GRANTING INJUNCTIVE RELIEF TO BEC DOES NOT SERVE THE PUBLIC INTEREST

36.   From a public policy standpoint, granting the injunctive relief requested by BEC would undermine the paramount public policy of the finality of confirmation orders.  The Plan and Confirmation Order both plainly provide that the Trustee may condition future distributions on receipt of the Tax Forms.  Given this requirement, the only way for the Trustee to make additional distributions in the event of a forfeiture by one or more shareholders is if he knows the identity of, and number of DNIB shares held by, each DNIB shareholder that has complied with the Trust's tax requirements.  All shareholders had an opportunity to file objections to the Plan. Only one shareholder filed an objection and it was overruled by the Bankruptcy Court.  The Confirmation Order was not appealed and became a final order allowing the Plan to go effective on October 11, 2016.   BEC should not be permitted to disrupt the finality of the Confirmation Order by seeking to enjoin actions by the Trustee that are explicitly permissible under the Plan and/or necessary for the Trustee to be able to make distributions to stakeholders pursuant to the Plan.

37.   The public interest also favors the prompt and efficient resolution of bankruptcy cases and a stay will only cause further delays in distributions and administration of the Plan. S*ee, e.g., Calabria v. CIT Consumer Grp. (In re Calabria)*, 407 B.R. 671, 683 (Bankr. W.D. Pa.

2009) (holding that where a stay "will only cause further delays . . . denying the request for stay is actually in the public interest"); *Turner v. Frascella Enters., Inc. (In re Frascella Enters., Inc.)*, 388 B.R. 619, 629 (Bankr. E.D. Pa. 2008) (stating that the public interest "requires [the] prompt and fair resolution of bankruptcy cases"); *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 272 (S.D.N.Y. 2004) (holding that "the public interest [is] in the expeditious administration of bankruptcy cases . . . rather than [the] litigation of claims lacking a substantial possibility of success") (quotations and citations omitted).  Thus, the public interest compels the denial of injunctive relief here.

## VII.   BEC IS NOT ENTITLED TO A STAY PENDING APPEAL

38.   To prevail on a motion for stay pending appeal, a movant must carry the "heavy burden" of showing that: (1) the movant is likely to succeed on the merits; (2) the movant will be irreparably injured absent a stay; (3) issuing the stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest favors issuance of the stay.  *See In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 519 (Bankr. D. Del. 2007) (*citing Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).  A party seeking a stay pending appeal has a heavy burden to demonstrate that such extraordinary relief is warranted.  *See In Re F.G. Metals, Inc.*, 390 B.R. 467, 471 (Bankr. M.D. Fla. 2008) ("A motion for stay pending appeal under Rule 8005 is an extraordinary remedy and requires a substantial showing on the part of the movant.") (quotations and citations omitted); *see also Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) ("On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy.")  Stays pending appeal are "sparingly granted" and are "disfavored" because "they interrupt the ordinary process of judicial review and postpone relief for the prevailing party."  *Dellums v. Smith*, 577 F. Supp. 1456, 1457 (N.D. Cal. 1984).  "A court may deny a motion for stay if the movant fails to

make a showing on any of the above factors. . . . However, none of the factors are determinative and courts must balance all of the factors in order to decide whether to grant a stay." *Genesis Health Ventures*, 367 B.R. at 519 (citations omitted); *In re W.R. Grace & Co.*, 475 B.R. 34, 206 (D. Del. 2012) ("[T]he moving party must show satisfactory evidence on all four criteria.") (quotations omitted).  A stay will be denied when, as here, the movant fails to demonstrate either irreparable harm or a likelihood of success on the merits.  *See, e.g., Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings, Inc.)*, No. 07-10416 (KJC), 2009 WL 1833875, at \*2 (D. Del. June 26, 2009); *Bepco, L.P. v. 15375 Mem'l Corp. (In re 15375 Mem'l Corp.)*, No. 06-10859 (KG), 2009 WL 393948, at \*1 (D. Del. Feb. 18, 2009).

39.     As noted above, in the matter at hand, each factor favors the Trust and demonstrates that a stay should not be granted.  As a result, this Court should also deny BEC's request for a stay pending appeal under Federal Rule of Bankruptcy Procedure 8007.

## VIII.   IF THE COURT GRANTS INJUNCTIVE RELIEF OR A STAY PENDING APPEAL, BEC SHOULD BE REQUIRED TO POST A BOND

40.     If this Court determines to grant a temporary restraining order or a stay of the Trustee's ability to make further distributions to shareholders under the Plan, BEC should be required to post a bond of at least $250,000.00.  Imposition of the injunctive relief/stay demanded by BEC is adding to the Trust's costs to address BEC's now multiple filings, and is likely to create additional litigation and demands from shareholders that have properly and timely complied with the Trustee's request for the production of the Tax Documents and are expecting a timely distribution of Trust assets.  To the extent litigation arises from the additional delay of distributions caused by BEC, BEC should be required to compensate the DNIB shareholders for the reduction to their distributions caused by the unnecessary expenditure of additional professional fees and expenses to respond to such demands and potential litigation.

17

Typically, a party requesting a stay must post a bond unless it can demonstrate "why [the] Court should deviate from the ordinary full security requirement." *Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*, No. 08-10375 (JMP), 2008 U.S. Dist. LEXIS 19801, at *14 (S.D.N.Y. Mar. 7, 2008) (quotations omitted); *see also* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.")  The burden is on the movant to establish that a bond should not be imposed.  *See, e.g. ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 361 B.R. 337, 350 (S.D.N.Y. 2007) ("Because a supersedeas bond is designed to protect the appellee, the party seeking a stay without bond has the burden of proving specific reasons why the court should depart from the standard requirement of granting a stay only after posting a supersedeas bond in the full amount of the judgment.") (citation omitted); *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1190-91 (5th Cir. 1979).  Here, if a temporary restraining order or a stay is imposed, a bond is necessary.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court deny BEC's request to enjoin the Trustee from acting as requested in the Motion and to grant such other and further relief as may be just and proper.

Dated:  August 2, 2017
       Wilmington, Delaware

Respectfully submitted,

*/s/ John H. Knight*
**RICHARDS, LAYTON & FINGER, P.A**.
John H. Knight (No. 3848)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 498-7701
Email: knight@rlf.com
      steele@rlf.com
      haywood@rlf.com

- and -

**LATHAM & WATKINS LLP**
Peter M. Gilhuly (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Amy C. Quartarolo (admitted *pro hac vice*)
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone:  (213) 485-1234
Fax:  (213) 891-8763
Email:  peter.gilhuly@lw.com
      kim.posin@lw.com
      amy.quartarolo@lw.com

*Counsel for the DNIB Liquidation Trust*