IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE DNIB UNWIND, INC. (f/k/a BIND THERAPEUTICS, INC.), | Chapter 11<br>Case No. 16-11084 (BLS)<br>(Jointly Administered) |
| Post-Effective Date Debtor. | |
| B.E. CAPITAL MANAGEMENT FUND, LP, on behalf of itself and all others similarly situated, | Adv. No. 17-50882 (BLS) |
| Appellants, | |
| v. | Civ. No. 17-945 (GMS) |
| GEOFFREY L. BERMAN, in his capacity as Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.), | |
| Defendant/Appellee. | |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is appellant B.E. Capital Management LLP's *Emergency Motion for Temporary Restraining Order and Preliminary Injunction and a Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* (D.I. 4) ("Emergency Motion"). For the reasons that follow, the court will deny the Emergency Motion.

### II. BACKGROUND

This appeal arises from the bankruptcy court's memorandum order, entered on July 13, 2017 (B.D.I. 694)[1] ("Memorandum Order") denying appellant's *Motion for Determination that the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or, Alternatively, is an Impermissible Plan Modification*

---

[1] The docket of the Chapter 11 cases, captioned *In re DNIB Unwind, Inc.*, Case No. 16-11084 (BLS) (Bankr. D. Del.), is cited herein as "B.D.I. ___." The docket of the adversary proceeding, captioned *B.E. Capital Management Fund LP v. Berman*, Adv. No. 17-50882 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. ___."

1

(B.D.I. 615) ("Motion for Determination"), which sought a determination by the bankruptcy court that the Trustee's conditioning of distributions to shareholders upon receipt of certain Tax Documents (defined below) is impermissible under the debtors' confirmed plan.

The following facts appear to be undisputed. On September 26, 2016, the bankruptcy court entered an order confirming debtors' plan of liquidation (B.D.I. 457), which, *inter alia*, established the Liquidating Trust of DNIB Unwind, Inc. ("Trust") and appointed appellee Geoffrey L. Berman as Trustee. On December 15, 2016, Trustee made an initial distribution of $8 million to shareholders. (*See* B.D.I 694 at 3.) Thereafter, in consultation with the Trust's tax professionals, Trustee concluded that further distributions to the debtors' former shareholders should be conditioned upon submission of certain tax documents, consisting of a Form W-8 or W-9 (the "Tax Forms") and an equity certification form (the "Equity Certification Form")[2] to be completed by the nominees of DNIB shareholders (the "Nominees") who held their shares in street name (collectively, the "Tax Documents"). On February 7, 2017, Trustee sent a notice requesting submission of same on or before August 7, 2017 ("Submission Deadline"). (*See* B.D.I. 590.) On March 22, 2017, appellant filed the Motion for Determination, arguing that the Trustee is mistaken (or at least overly cautious) in his position that the Tax Forms and Equity Certification Forms are necessary; that there may be alternative approaches (such as seeking a private letter ruling from the IRS); and that requiring submission of this information unfairly burdens shareholders, placing an unreasonable and unnecessary condition upon their right to receive their distributions. (*See*

---

[2] The Equity Certification Form requires that each Nominee provide the following information: (1) DTC participant name, number, contact name, contact number and email address, and authorized signature; (2) beneficial holder name and account number; and (3) number of shares of CUSIP 05548N 107 that were held by the Nominee for the indicated account as of the Distribution Record Date. (*See* B.D.I. 627-1, ¶ 8, Ex. 2.) Depository Trust Company ("DTC") is the Trust's transfer agent. It is the Trustee's position that because most DNIB stock in existence on the Distribution Record Date was held in street name, the Trustee does not know the identity of each individual shareholder, nor does the Trustee know how many shares of DNIB stock each such holder owned as of the Distribution Record Date. As a result, the Trustee required that all Nominees complete the Equity Certification Form. (*See* D.I. 9 at 11-12.)

2

B.D.I. 615.) A hearing on the Motion for Determination was held on May 31, 2017. (D.I. 4-4.)

On July 13, 2017, the bankruptcy court entered the Memorandum Order denying the relief sought in the Motion for Determination. (B.D.I. 694.) The bankruptcy court determined that the plan and confirmation order, along with the post-confirmation trust instrument ("Trust Agreement"), govern the rights and responsibilities of the Trustee and the beneficiaries, and that those governing documents permit the Trustee to demand from Trust beneficiaries any forms or information relating to the Trustee's obligations to withhold and to condition distributions upon receipt of such forms or information. (*See id.* at 2.) The bankruptcy court noted that "the Trustee's documentation requests here impose at most a modest burden on the shareholders/beneficiaries" and further declined, on a post-confirmation basis, to second-guess the judgment of the Trustee in the exercise of his duties where those actions are directly contemplated by the governing documents. (*See id.* at 3.)

The procedural posture of this Emergency Motion is unusual given the pendency of an adversary proceeding appellant initiated immediately following the entry of the Memorandum Order, which remains pending before the bankruptcy court, and which seeks ***identical*** relief. Specifically, on July 14, 2017, appellant filed its Notice of Appeal with respect to the Memorandum Order. (D.I. 1.) The same day, appellant initiated the adversary proceeding against Trustee by filing a complaint seeking declaratory and injunctive relief (as later amended, the "Complaint") (Adv. D.I. 1, 14), together with an *Emergency Motion for Preliminary Injunction and Temporary Restraining Order* (Adv. D.I. 4) ("TRO Motion"). The TRO Motion seeks precisely the same relief sought in the Emergency Motion: an order enjoining the Trustee, through a final adjudication of the Motion for Determination, from:

> (i) conditioning further distributions to DNIB shareholders on the receipt of required tax documents, consisting of a Form W-8 or W-9 (the "Tax Forms") and an equity certification form (the "Equity Certification Form") to be completed by the nominees of

3

DNIB shareholders (the "Nominees") who held their shares in street name (collectively, the "Tax Documents"); and

(ii) making any further distributions to DNIB shareholders until further order of the court.

(*See* Adv. D.I. 4 at 12; D.I. 4 at 1-2.) The TRO Motion further sought a stay pending appeal as alternative relief to the injunctive relief it sought. (*See* Adv. D.I. 4 at 11-12.) On July 20, the bankruptcy court promptly set a hearing on the TRO Motion for August 3, 2017. (*See* Adv. D.I. 9.) Notwithstanding the pending TRO Motion, and the appellant's knowledge on July 20 that an emergency hearing date had been set by the bankruptcy court, appellant filed the Emergency Motion in this court on July 25. (D.I. 4.) As Trustee points out, ordinarily, a motion seeking a stay pending appeal of a bankruptcy court's order must be brought first in the bankruptcy court. *See* Fed. R. Bankr. P. 8007(a)(1). Only if bringing the motion in the bankruptcy court is impracticable or if the bankruptcy court has failed to rule on the motion seeking a stay may the movant bring the motion to the district court before giving the bankruptcy court an opportunity to consider the relief sought. *See* Fed. R. Bankr. P. 8007(b)(2)(A)-(B). Clearly neither condition arose here, as the bankruptcy court promptly scheduled the matter for hearing.

With respect to these duplicate requests for relief, Appellant merely offered: "[s]hould the Bankruptcy Court grant relief duplicative of that sought herein, B.E. Capital will promptly notify this Court." (D.I. 4 at 6.) On August 3, the bankruptcy court held a hearing on the TRO Motion, and on August 7, appellant filed a letter (i) advising this court that the request for stay had been denied, and (ii) requesting leave to file a reply in further support of the Emergency Motion. (*See* D.I. 11.) Given appellant's request for expedited consideration of its Emergency Motion, which appellant argued must be decided prior to the August 7 Submission Deadline, appellant's offer to promptly advise this court of any duplicative relief granted by the bankruptcy court is hollow and would not have spared this court its time and efforts in considering the

4

pleadings on an expedited basis had the bankruptcy court granted the stay requested in the TRO Motion. Appellant's tactics are wasteful of the court's resources and improper.[3]

## III. JURISDICTION AND STANDARDS OF REVIEW

Appeals from the bankruptcy court to this court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

"A preliminary injunction should be granted only in extraordinary situations . . ." *Uniflex, Inc. v. Endurapack, Inc. (In re Uniflex, Inc.)*, 319 B.R. 101, 104 (Bankr. D. Del. 2005). For a preliminary injunction to issue, a movant must show that it is both (1) likely to experience irreparable harm without an injunction and (2) reasonably likely to succeed on the merits. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) (citations omitted). "A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require. If relevant, the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest." *Id.*

---

[3] The court was initially inclined to let the matter of the tactics employed by appellant rest with the relatively mild admonishment noted above. On reflection, however, the court will take this opportunity to remind practitioners appearing before it and our sister bankruptcy court of the need to exercise some modicum of restraint and good judgment – regardless of the area of counsel's practice. The bankruptcy and district courts for the District of Delaware are some of the busiest in the nation. Moreover, the bankruptcy court has operated and continues to operate with a veritable sword of Damocles hanging over its collective head – the potential loss of one or more of its judicial officers unless and until all of the court's seats are made permanent. This court, for the second time during the tenure of this judge, has been made to seek the assistance of district judges from other judicial districts due to the existence of one or more vacancies among the four authorized seats. It seems no one can say with any degree of certainty how long either of these conditions will remain extant. Lawyers should not operate like the proverbial ostrich with its head in the sand. Lawyers are officers of each of those courts and should conduct themselves as such – having regard not just for the interest of their clients but for the health of the institutions before whom they are litigating, including the human beings who conduct the business of those institutions – namely, the judges. This improvident appeal is but one example of the too, too many instances where lawyers simply leave their common sense at home rather than bringing it along to the office. This approach to practice, as this judge has said from time to time, is like inflicting death by a thousand cuts, and it needs to stop!

"The granting of a motion for stay pending appeal is discretionary with the court." *See In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellant bears the burden of proving that a stay of the Confirmation Order is warranted based on the following criteria: (1) whether appellant has made "a strong showing" that it is likely to succeed on the merits; (2) whether appellant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors, according to the Supreme Court, are the first two: whether the appellant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citations omitted)). The court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

## IV. DISCUSSION

### A. Motion for Injunction

Appellant purports to seek injunctive relief pursuant to Federal Rule of Civil Procedure 65. While Rule 65 refers to injunctive relief, the relief sought in the Emergency Motion ties to the permanent injunctive relief sought by appellant in the Complaint, which remains pending before the bankruptcy court. There is no complaint for injunctive relief filed by appellant pending before this court. Even if the motion for injunctive relief were procedurally proper, the

6

circumstances of this case are not extraordinary, and appellant has not established the elements necessary to warrant such relief.

## B. Motion for Stay Pending Appeal

***Likelihood of Success on the Merits.*** As to the first factor, appellant has not met its burden of making "a strong showing" that it is likely to succeed on the merits. According to appellant's designation, the issue on appeal is: "Did the Bankruptcy Court err, as a matter of law, [in holding] that the Plan, the Confirmation Order and the Trust Agreement all operate to provide the Trustee with the authority to demand the tax forms and the Certifications?" (D.I. 5.) Appellant argues that the Trustee's proposal not to make distributions to holders of DNIB stock in street name through the debtors' transfer agent violates Section X.K of the plan." (D.I. 4 at 4.) Appellant further argues that the Trustee "can satisfy tax reporting requirements by complying with 26 C.F.R. § 1.671-4(b)(3), an optional reporting method for trusts treated as owned by two or more grantor beneficiaries." (*See id.* at 5, n.5.) "Alternatively, [Trustee] can satisfy tax reporting requirements under 26 CFR § 1.671-4(a) by relying on the Form W-9 provided by the Debtor's transfer agent, as other liquidating trusts do and have done. Neither reporting method requires the collection of Form W-9s from trust beneficiaries." (*See id.*) Appellant further takes issue with the fact that the bankruptcy court did not rule on whether the optional reporting methods appellant has suggested would in fact permit the Trustee to fulfill his tax reporting obligations under the plan and Trust Agreement.[4]

Conversely, the Trustee argues that section X.K of the plan, cited by appellant, provides that the Trustee may make distributions to holders of claims and shareholders in any of a number of different ways, ***including*** through a transfer agent, but does not require it. (*See* D.I. 9 at 13.)

---

[4] In declining to substitute its own judgment for the Trustee's, the bankruptcy court stated: "[Appellant] may be correct that there are other avenues available to the Trustee. But the Trustee is entitled to exercise his discretion and judgment in construing and carrying out his duties." (B.D.I. 694 at 3.)

7

Trustee further relies on his declaration setting forth the advice that the Trust has received from its tax professionals; specifically, that the Trust's accountant has advised the Trustee that the Trust is required to provide to IRS tax identification numbers for each individual DNIB shareholder entitled to a distribution to the plan. (*See* D.I. 9-1, ¶ 5-6.) Trustee further argues that the governing documents explicitly provide that the Trustee may condition future distributions to shareholders upon receipt of a completed Form W-8 or W-9. (*See id.* at 8-9.) Trustee contends that, because most DNIB stock in existence on the Distribution Record Date was held in street name, the Trustee does not know the identity of each individual shareholder, nor does the Trustee know how many shares of DNIB stock each such holder owned as of the Distribution Record Date, and as a result, the Trustee required that all Nominees complete the Equity Certification Form. (*See id.* at 11-12.)

The court agrees with Trustee. Section X.K of the plan clearly provides that the Trustee may make distributions to holders of claims and shareholders in a number of different ways, including: (1) at addresses set forth on proofs of claim filed by creditors or proofs of interest filed by shareholders; (2) at addresses set forth in any written notices of address change; (3) at the address reflected in the Schedules **or** (4) through the transfer agent for BIND Equity Interests. (*See* D.I. 4-2, Ex. A, at 51) (emphasis added).) The court finds no support in the governing documents for appellant's position that only the transfer agent (and not the Trustee) may make distributions to shareholders.

Paragraph 3 of the Confirmation Order provides that the debtors are required to make all required withholding payments and to comply with all applicable tax laws with respect to any distributions. (B.D.I. 457 at 17.) The plain language of the plan and the Trust Agreement further provide that the Trustee may require that eligible shareholders return a completed Tax Form to

8

the Trust by a date certain to receive distributions from the Trust. Specifically, Section XVI.J of the plan provides as follows:

> The Debtors or [T]rustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim or Allowed Equity Interest complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtors or [T]rustee make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtors or the [T]rustee and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors or the [T]rustee, or their respective property.

(D.I. 4-2, Ex. A, at 67.) The plan further provides that the Trustee has the discretion to administer the plan and to make distributions to stakeholders, including shareholders, pursuant to the plan. (*See id.*) Section 4.1(f) of the Trust Agreement also explicitly authorizes the Trustee to request and obtain the Tax Forms from Trust beneficiaries. (B.D.I. 457 at Ex. A, Ex. A.)

The Trustee has been advised by its tax professionals that the Trust is required to provide the IRS tax identification numbers for each beneficiary of the Trust, including all shareholders entitled to a distribution under the plan (B.D.I. 627-1 at ¶ 6). Appellant has offered no reason why the Trustee should not rely upon the advice of his professionals. Under the plain language of the governing documents, the Trustee is also within his authority to request Tax Documents and to condition distributions upon receipt of same. Although appellant clearly disagrees with the tax advice provided by the Trust's tax professionals, appellant offers only its own opinion that there are other ways in which the Trustee may satisfy his obligations. Appellant has provided no contradictory expert opinion or testimony from a tax professional to support its allegation that the Tax Forms are not required and suggests no viable alternative to the Equity Certification Form. Based on the foregoing, the court cannot conclude that appellant has a likelihood of success on appeal.

***Irreparable Injury Absent a Stay.*** Appellant has also failed to establish that it would suffer irreparable harm if is not granted stay relief. Irreparable harm is "harm that cannot be

9

prevented or fully rectified" by a successful appeal. *Revel AC*, 802 F.3d at 568. Appellant argues that if the Trustee is permitted to condition distributions on the receipt of the Tax Documents, he will cause a substantial number of Distribution Record Date shareholders[5] to forfeit future plan distributions to which they legally are entitled. (*See* D.I. 4 at 11.) Appellant further argues that, "[o]nce August 7 has passed and the funds are out of the door, there is no prospect of clawing the distributions back into the estate and distributing them to the rightful recipients should it later be determined that the Trustee's actions were, in fact, in contravention of the Plan and the Bankruptcy Code. Were this to happen, [appellant] would suffer irreparable injury without recourse against those Distribution Record Date shareholders that received a windfall at its expense." (*See* D.I. 4 at 12.) Conversely, Trustee argues that appellant will not suffer irreparable harm (or any harm) if injunctive relief is not granted because appellant, as a shareholder of record as of the Distribution Record Date, has already provided the requisite Tax Documents to the Trust and, therefore, will receive its pro rata share of all future distributions under the plan regardless of when they are made. (*See* D.I. 9 at 13-14.)

Appellant purports to represent similarly situated shareholders but, having apparently complied with the Trustee's request, it cannot be said that appellant is similarly situated. Moreover, appellant's harm, if any, is economic. "A purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless "the potential economic loss is so great as to threaten the existence of the movant's business." *See Revel AC*, 802 F.3d at 572. No such assertion is advanced in the Emergency Motion.

---

[5] Appellant appears to assert, without analysis, that the Distribution Record Date shareholders that do not submit the Tax Documents, and therefore do not receive distributions, comprise a putative class, and that appellant is representative of that class. (*See* D.I. 4 at 11.)

***Other factors.*** Having evaluated appellant's likelihood of success on the merits and irreparable injury absent a stay, and having determined that appellant has failed to carry its burden as to either element, the court is satisfied no further analysis is required.[6]

## V. CONCLUSION

The bankruptcy court's ruling is supported by the plain terms of the governing documents. Appellant has failed to establish a likelihood of success on appeal or that it will suffer irreparable harm in absence of a stay. For the foregoing reasons, the court will deny the Emergency Motion. A separate order shall follow.

Dated: August 9, 2017

_____
UNITED STATES DISTRICT JUDGE

---

[6] "If the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis." *See Revel AC*, 802 F.3d at 571.

11