# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:                                                   :     Bankruptcy Case No. 16-11084 (BLS)
                                                         :
DNIB UNWIND, INC.                                        :
(f/k/a BIND THERAPEUTICS, INC.),                         :
                                                         :
                Post-Effective Date Debtor.     :
                                                         :
                                                         :
---------------------------------------------------------- x

B.E. CAPITAL MANAGEMENT FUND LP, on      :     Case No. 17-945-GMS
behalf of itself and all others similarly situated,   :
                                         :     On Appeal from the United States
        Appellant,       :     Bankruptcy Court for the District of
                                         :     Delaware
     v.                        :
                                         :
GEOFFREY L. BERMAN, in his capacity as   :
Trustee of the Liquidating Trust of DNIB :
Unwind, Inc. (f/k/a Bind Therapeutics, Inc.),   :
                                         :
        Appellee.        :
                                         :
---------------------------------------------------------- x

## ANSWERING BRIEF OF APPELLEE

| **RICHARDS, LAYTON & FINGER, P.A.** | **LATHAM & WATKINS LLP** |
|---|---|
| John H. Knight (No. 3848) | Peter M. Gilhuly (admitted pro hac vice) |
| Amanda R. Steele (No. 5530) | Kimberly A. Posin (admitted pro hac vice) |
| Brett M. Haywood (No. 6166) | Amy C. Quartarolo (admitted pro hac vice) |
| One Rodney Square | 355 South Grand Avenue |
| 920 North King Street | Los Angeles, CA 90071-1560 |
| Wilmington, DE 19801 | Telephone: (213) 485-1234 |
| Telephone: (302) 651-7700 | Facsimile: (213) 891-8763 |
| Facsimile: (302) 498-7701 | Email: peter.gilhuly@lw.com |
| Email: knight@rlf.com |       kim.posin@lw.com |
|     steele@rlf.com |       amy.quartarolo@lw.com |
|     haywood@rlf.com | |
| | |
| Dated: September 27, 2017 | *Counsel for Appellee* |

**CORPORATE DISCLOSURE STATEMENT**

The DNIB Liquidation Trust (the "**Trust**") is a grantor trust that was formed on October 11, 2016 under 26 CFR § 1.671-4(a).  The Trustee of the Trust is not aware of any beneficial holders that own 10% of more of the beneficial interests of the Trust.

i

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..................................................................................... 1

STANDARD OF REVIEW ........................................................................................ 2

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................. 5

I.    BEC LACKS STANDING TO PROSECUTE THIS APPEAL ........................................ 5

II.   THE TRUST'S OBLIGATION TO PROVIDE TAX IDENTIFICATION
      NUMBERS TO THE IRS IS NOT OPTIONAL .................................................. 7

III.  THE BANKRUPTCY COURT DID NOT ERR IN FINDING THAT THE
      CONFIRMATION ORDER, PLAN AND TRUST AGREEMENT PROVIDE
      THE TRUSTEE WITH THE AUTHORITY TO REQUIRE THE TAX
      DOCUMENTS .......................................................................................... 9

      A.    Section XVI.J of the Plan Provides Authority for the Trustee to Demand
            Receipt of the Tax Forms .................................................................. 10

      B.    The Confirmation Order Authorizes the Trustee to Require Shareholders
            to Provide the Tax Documents ............................................................ 10

      C.    The Trust Agreement Also Supports the Bankruptcy Court's Ruling .................. 12

IV.   THE BANKRUPTCY COURT APPROPRIATELY DETERMINED THAT THE
      MECHANICS OF TRUST DISTRIBUTIONS SHOULD BE LEFT TO THE
      JUDGMENT OF THE TRUSTEE .................................................................. 14

CONCLUSION ........................................................................................................ 19

US-DOCS\93489842.5

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Alpha Natural Res.*,
2016 Bankr. LEXIS 4374 (Bankr. E.D. Va. Dec. 20, 2016) ....................................................6

*Anderson v. Bessemer City*,
470 U.S. 564 (1985)...................................................................................................................2

*In re Evans Products Co.*,
65 B.R. 870 (S.D. Fla. 1986) .................................................................................................5, 7

*Fondiller v. Robertson (In re Fondiller)*,
707 F.2d 441 (9th Cir. 1983) ....................................................................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................................................................6

*General Motors Acceptance Corp. v. Dykes (In re Dykes)*,
10 F.3d 184 (3d Cir. 1993)....................................................................................................5, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................................................................6

*In re Orlando Invs., L.P.*,
103 Bankr. 593 (Bankr. E.D. Pa. 1989) ...................................................................................7

## STATUTES

26 U.S.C. § 6012(a)(4)...................................................................................................................7

## RULES

Fed. R. Civ. Proc. 52(a) .................................................................................................................2

## REGULATIONS

26 CFR § 1.671-4(a) .......................................................................................................................7

26 CFR § 1.671-4(b)(3) ..................................................................................................................8

26 CFR § 1.671-4(b)(3)(ii)(A)........................................................................................................9

26 CFR § 301.6109-1(c) .................................................................................................................8

## SUMMARY OF ARGUMENT[1]

The issue presented by BEC's appeal is whether the Bankruptcy Court erred in finding that "the Plan, the Confirmation Order and the Trust Agreement all operate to provide the Trustee with the authority to demand the tax forms and the Certifications."  No such error occurred.

As an initial matter, because BEC timely provided its tax information to the Trust while the Bankruptcy Court's ruling was pending, it lacks standing to bring this appeal on behalf of itself or other shareholders who *did not* timely provide their tax information to the Trust and the appeal should be denied on that basis alone.

As for the merits of BEC's appeal, the Bankruptcy Court's ruling should be upheld.  The Trust is ***required by law*** to provide tax identification numbers to the Internal Revenue Service (the "**IRS**") for each shareholder entitled to a recovery from the Trust, and the Trust's governing documents – including (1) the *Debtors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [SA-0002] (the "**Plan**"), (2) the Liquidation Trust Agreement, dated October 11, 2016, by and among the Debtors and the Trustee [APP-0063] (the "**Trust Agreement**") and (3) the Bankruptcy Court's *Findings of Fact, Conclusions of Law, and Order Confirming Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [SA-

---

[1] Although BEC did not file or provide its own appendix containing excerpts of the record, for the Court's convenience, the Trustee is submitting along with its Answering Brief an Appendix including all documents designated by BEC on BEC's Designation of Record [Docket No. 5] and a Supplemental Appendix including all documents separately designated by the Trust in its Amended Designation of Record [Docket No. 23].  Items attached to the Appendix are designated "APP-[xx]" and items attached to the Supplemental Appendix are designated "SA-[xx]."

As used in this brief, "Debtors" refers to DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.) and DNIB Subsidiary Corporation (f/k/a BIND Biosciences Security Corporation) who were debtors in chapter 11 in the Bankruptcy Court, the "Trustee" refers to Appellee, the Trustee of the DNIB Liquidation Trust (the "**Trust**"), and "BEC" refers to Appellant B.E. Capital Management Fund LP.

0480] (the "**Confirmation Order**") – collectively authorize the Trustee to condition distributions to shareholders upon the receipt of such information.  As such, the Trustee exercised appropriate discretion in requesting that shareholders provide the tax documents, which consist of a 1-page Form W-8 or W-9 (including the shareholder's tax identification number) and a 1-page certification necessary to be able to identify shareholders that did not hold their shares directly.  As the Bankruptcy Court held, requiring these forms imposed "at most a modest burden on shareholders/beneficiaries."  SA-0684.

## STANDARD OF REVIEW

In its Opening Brief, BEC describes the relevant standards of review, but its position as to which standard is applicable in this appeal is, at best, unclear.  BEC argues at one point that the Bankruptcy Court's ruling constitutes a "legal conclusion," but later suggests that the ruling should be reviewed as a finding of fact, arguing that "the Bankruptcy Court's holding was clearly erroneous."  BEC Opening Brief at 6, 14.

The Bankruptcy Court's ruling should be reviewed for clear error.  The Bankruptcy Court made factual findings that the Plan, the Trust Agreement and its Confirmation Order "all operate to provide the Trustee with the authority to demand the tax forms and the Certifications" and that "[i]t is not the province of the [Bankruptcy] Court, on a post-confirmation basis, to second-guess the judgment of the Trustee in the exercise of his duties where those actions are directly contemplated by the governing documents."  SA-0684.  As findings of fact, the Bankruptcy Court's conclusions, including any credibility determinations, assessments of physical and documentary evidence and inferences from other facts, are entitled to substantial deference.  *See* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); *see also Anderson v. Bessemer City*,

2

470 U.S. 564, 573-74 (1985) (finding that the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.") (citations and internal quotation marks omitted).

## STATEMENT OF FACTS

The Debtors filed petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on May 1, 2016.[2]  The sale of substantially all of the Debtors' assets to Pfizer Inc. was approved by the Bankruptcy Court on July 27, 2016 and closed on August 1.  The original Plan was filed shortly thereafter, on August 15, and was amended on September 14.  APP-0049.  Both the original Plan and the amended Plan provided for a Distribution Record Date of August 30, 2016 such that only holders of DNIB shares as of that date had standing to object to the Plan and were entitled to a recovery under the Plan.  SA-0014; SA-0049-50.  The deadline to object to the Plan was September 14, although the Bankruptcy Court agreed to consider the solitary Plan objection that was filed by a shareholder even though it was not filed until September 19 – just two days before the confirmation hearing was held on September 21.  SA-00315.  On September 26, the Bankruptcy Court overruled the Plan objection and entered the Confirmation Order.  SA-0480.  The Plan went effective fifteen days later on October 11 (the "**Effective Date**") and, pursuant to the terms of the Plan, all DNIB stock was deemed cancelled as of the Effective Date.[3]  SA-0049; SA-0650.

---

[2]  BEC erroneously states that the petition date was May 2, 2016.  *See* BEC Opening Brief at 3.  The Trustee provides this additional Statement of Facts to supplement and correct the factual background included in BEC's Opening Brief.

[3]  BEC also erroneously states that DNIB stock "continued to trade publicly until the Plan became effective on December 11, 2016" and that it "continued to trade over the counter for

As required by the Plan, the Initial Equity Distribution (as defined in the Plan) was made to shareholders within ninety days of the Effective Date, on or about December 15, 2016. APP-0052. Shareholders that held their shares in street name received their distributions through the Depository Trust Company ("**DTC**"). In early 2017, the Trust's accountant first advised the Trustee that the Trust is required to provide to the IRS tax identification numbers for each shareholder that receives a distribution from the Trust. APP-0052. In order to facilitate fulfillment of the Trust's tax reporting requirements, on February 7, 2017 (the "**Notice Date**"), the Trustee issued a notice requesting that all holders of DNIB shares as of the Distribution Record Date provide certain tax documents[4] to the Trust within 180 days as a condition to receiving any further Plan distributions. APP-0002; APP-0053.

Instructions regarding the Tax Documents and blank Equity Certification Forms were provided to DTC to post on its Legal Noticing System accessible to the Nominees and to the Nominees to distribute to the beneficial holders of DNIB stock as of the Distribution Record Date (as the Trustee did not know the identity of such holders). SA-0680. Subsequently, on April 18, 2017, the Trustee filed a Status Report reiterating the need for shareholders to provide

---

more than three months after the Distribution Record Date when . . . the Debtors' shares were canceled on the Effective Date." BEC Opening Brief at 3-4. In fact, the Effective Date was October 11 and the DNIB shares continued to trade for just 15 days after the Plan was confirmed and for just 42 days after the Distribution Record Date. It was not possible to halt trading of the DNIB stock until the Plan was confirmed approving both the August 30 Distribution Record Date and cancellation of the DNIB stock on the Effective Date and Financial Industry Regulatory Authority, Inc. ("**FINRA**") would not agree to halt trading of DNIB stock until the stock was officially cancelled.

[4]      The required tax documents consist of a Form W-8 or W-9 (the "**Tax Forms**") and an equity certification form (the "**Equity Certification Form**") to be completed by the nominees (the "**Nominees**") of DNIB shareholders who held their shares in street name (collectively, the "**Tax Documents**"). The Equity Certification Form requires that each Nominee provide the following limited information: DTC participant name, number, contact name, email address and phone number, and authorized signature; beneficial holder name and account number; and the number of DNIB shares that was held by the Nominee for the indicated account as of August 30, 2016. APP-0175.

the Tax Documents to the Trust.   APP-0167.   The Status Report was disseminated to

shareholders through DTC, the Nominees and Broadridge and was also described in the Trust's

Form 8K publicly filed by the Trust with the Securities and Exchange Commission on April 24,

2017.  SA-0658.  DTC subsequently informed the Trustee that it would not agree to make any

further shareholder distributions if such distributions were made to less than all shareholders

(which would result where at least one shareholder failed to provide its Tax Documents timely

and was deemed to forfeit future distributions from the Trust).  APP-0170.

On March 22, 2017, BEC filed *B.E. Capital Management Fund LP's Motion for

Determination That the Trustee's Conditioning of Distributions to Shareholders on Their

Submission of Equity Distribution Form Violates the Plan, or, Alternatively, is an Impermissible

Plan Modification* (the "**BEC Motion**").  APP-0017.  A hearing on the BEC Motion was held on

May 31 and the Bankruptcy Court entered its Memorandum Order denying the BEC Motion on

July 13.  SA-0682.  This appeal followed on July 14.  APP-0400.

<u>**ARGUMENT**</u>

I.  <u>**BEC LACKS STANDING TO PROSECUTE THIS APPEAL**</u>

"[A]n appellant must qualify as a 'person aggrieved' to be eligible for appellate review of

a bankruptcy court order."  *General Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d

184, 188 (3d Cir. 1993); *see also Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443

(9th Cir. 1983) ("To have standing to bring this appeal, appellant must demonstrate that she was

directly and adversely affected pecuniarily by the order of the bankruptcy court.."); *In re Evans

Products Co.*, 65 B.R. 870, 874 (S.D. Fla. 1986) ("In order to have standing to appeal, the

Appellant must be an aggrieved person -- directly adversely affected pecuniarily by the order of

the Bankruptcy Court.").  Thus, "[t]o appeal from an order of a bankruptcy court one must show

5

that the order diminishes one's property, increases one's burdens or impairs one's rights."

*General Motors*, 10 F.3d at 188-89.

As the United States Supreme Court has observed, "the irreducible constitutional minimum of standing contains three elements:"

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". . . Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *In re Alpha Natural Res.*, 2016 Bankr. LEXIS 4374 (Bankr. E.D. Va. Dec. 20, 2016) ("In cases before a bankruptcy court, an objecting party demonstrates an 'injury in fact' by demonstrating a financial interest in the outcome of a given proceeding.").

BEC is not a "person aggrieved" because it has suffered no injury in fact. BEC (through its Nominee) provided its Tax Documents to the Trust on June 16, 2017 (28 days before BEC filed its Notice of Appeal) and now is entitled to its pro rata share of all future distributions to be made to shareholders under the Plan. [Docket No. 9 at Exh. B.] As such, BEC does not have a financial interest in the outcome of this appeal.[5]

---

[5]   Ironically, BEC's recovery actually will be ***diminished*** if it prevails on this appeal and *all* shareholders become entitled to share in all future distributions regardless of whether they timely provided the Tax Documents because the overall number of DNIB shares eligible for distributions will be greater.

US-DOCS\93489842.5

BEC's asserted desire to seek relief on behalf of other shareholders that did not timely provide their Tax Documents[6] (and have therefore forfeited future distributions) does not solve its fatal standing issue because it does not have standing solely to seek to enforce the rights of others. *See In re Orlando Invs., L.P.*, 103 B.R. 593, 597 (Bankr. E.D. Pa. 1989) ("the statutory right to be heard on an issue [does not include] the right to assert interests possessed solely by others."); *In re Evans Products Co.*, 65 B.R. 870, 874 (S.D. Fla. 1986) (finding appellants lacked standing to raise rights of creditors vis a vis each other because "a determination that Appellants are correct will in no way affect their rights under the Plan, therefore, they are not aggrieved persons."). Because BEC is not an aggrieved person with respect to the issues on appeal, it lacks standing in any capacity. If, however, this Court is inclined to allow BEC to proceed with the appeal, the Bankruptcy Court's ruling should be upheld for each of the reasons set forth below.

## II. THE TRUST'S OBLIGATION TO PROVIDE TAX IDENTIFICATION NUMBERS TO THE IRS IS NOT OPTIONAL

BEC's appeal relies heavily on its argument that the Trust's provision of shareholder tax identification numbers to the IRS is strictly "optional." BEC Opening Brief at 10-11. It is not. Pursuant to Recital G(ii) of the Trust Agreement, the Trustee is required "to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a)." APP-0064; APP-0384. Specific tax provisions, namely 26 U.S.C. § 6012(a)(4) and 26 CFR § 1.671-4(a), require the Trustee to file a Form 1041, "U.S. Income Tax Return for Estates and Trusts,"

---

[6]     BEC argues that conditioning future distributions upon receipt of the Tax Documents "will result [in] depriving nearly a quarter of Distribution Record Date shareholders of the distributions to which they are entitled." BEC Opening Brief at 12. First and most importantly, BEC intentionally misleads the Court by implying that BEC is part of this group of shareholders and failing to mention anywhere in its Opening Brief that it's Tax Documents have already been provided to the Trust. Second, neither BEC nor the Trust is able to determine how many actual shareholders (versus the number of shares) have forfeited their distributions as neither can know how many shareholders (most of whom held their shares through a Nominee) held the approximately 25% of shares that failed to provide timely tax information to the Trust. SA-0754.

on behalf of the Trust.  Under the Form 1041 reporting method, the regulations require the Trust

to report taxpayer identification numbers in accordance with the directions for Form 1041.  *See*

26 CFR § 301.6109-1(c).  The instructions to Form 1041 provide (at pages 12-13) that (A) where

the trust is a grantor trust, the Trustee is required to "fill in only the entity information of Form

1041" and to show "dollar amounts" "only on an attachment to the form"; and (B) the attachment

to Form 1041 must include "[t]he name, identifying number, and address of the person(s) to

whom the income is taxable" (*i.e.* each shareholder).  APP-0380.

BEC argues that, as an alternative[7] to the reporting requirements of 26 CFR § 1.671-4(a)

described above, the Trustee may instead either (A) comply with 26 CFR § 1.671-4(a) by solely

reporting DTC's tax identification number instead of the tax identification number of each

shareholder, or (B) comply with the requirements contained in 26 CFR § 1.671-4(b)(3).  BEC

Opening Brief at 12, fn 11.  As to the former, the instructions to Form 1041 are clear that the

Trustee must provide a tax identification number for "the person(s) to whom the income is

taxable" and the income of the Trust is taxable to each grantor/shareholder and not to DTC.[8]  As

to the latter proposed alternative, 26 CFR § 1.671-4(b)(3) requires that the Trust file Forms 1099.

---

[7]      In mentioning potential "alternative approaches" to the path selected by the Trustee, the
Bankruptcy Court in its Memorandum Order references potentially "seeking a private letter
ruling from the IRS," which was raised by BEC in its reply in support of the BEC
Motion.  However, requesting an IRS private ruling would be costly and could take a year or
more to be resolved if the IRS even agrees to provide such a ruling on the issues at hand.  In any
event, the Bankruptcy Court plainly considered this option in issuing its Order and correctly
determined that the additional time and expense was not warranted.

[8]      *See* Trust Agreement, Section 8.2(b) ("Thus, the Beneficiaries shall be treated as the
grantors and owners of a grantor trust for federal income tax purposes.") and Section 13.2
("[T]he Liquidating Trustee shall prepare and distribute a statement setting forth the information
necessary for each Liquidating Trust Beneficiary to determine its share of items of income, gain,
loss, deduction or credit for United States federal income tax purposes.") [APP-0076]; Plan,
Section XVI.J ("[E]ach Holder of an Allowed Claim or Allowed Equity Interest that is to receive
a Distribution under the Combined Plan and Disclosure Statement shall have the sole and
exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such
Holder by any Governmental Unit, including income, withholding and other tax obligations, on
account of such Distribution.") [SA-0073].

Under the 1099 reporting method, the Treasury Regulations similarly require the Trust to report all items of income paid to the Trust by all payors and to identify "each grantor or other person treated as an owner of the trust as the payee."  26 CFR § 1.671-4(b)(3)(ii)(A).  The Trustee can comply with these requirements only if the shareholders that held their shares in street name identify themselves by providing the Tax Documents.  In short, the Tax Documents are not merely "optional," as BEC asserts, but are *required* in order for the Trust to fulfill its tax reporting obligations.  BEC has never provided any evidence, including any expert testimony, report or documentation, to the contrary, and it points to no evidence in the record on appeal in support of its unfounded assertion that there are viable alternatives to the reporting requirements upheld by the Bankruptcy Court.[9]

### III.   THE BANKRUPTCY COURT DID NOT ERR IN FINDING THAT THE CONFIRMATION ORDER, PLAN AND TRUST AGREEMENT PROVIDE THE TRUSTEE WITH THE AUTHORITY TO REQUIRE THE TAX DOCUMENTS

In its Memorandum Order, the Bankruptcy Court held that the Trust's conditioning of future distributions upon the receipt of the Tax Documents is "directly contemplated by the governing documents" and specifically referenced Section XVI.J of the Plan, Section 4.1(f) of the Trust Agreement and Paragraph 3 of the Confirmation Order.  SA-00683-84.   The Bankruptcy Court concluded that these three documents "all operate to provide the Trustee with the authority to demand the tax forms and the Certifications."  SA-0684.  BEC argues that the particular provisions of the governing documents cited to in the Memorandum Order, when considered in isolation, do not serve as a "basis of authority for the Trustee."  To the contrary, the governing documents, including but not limited to the three provisions cited to in the Memorandum Order, undeniably support the Bankruptcy Court's ruling denying the relief requested by BEC.

---

[9]      Indeed, Mr. Braziel, Managing Director of BEC, testified at the hearing on the BEC Motion that he has not even consulted with an accountant on these issues.  APP-0317.

### A.   Section XVI.J of the Plan Provides Authority for the Trustee to Demand Receipt of the Tax Forms

First, Section XVI.J of the Plan explicitly requires the Trustee to "comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority" and permits the Trustee to "require, as a condition to receipt of a Distribution, that the Holder of an . . . Allowed Equity Interest complete and return a Form W-8 or W-9, as applicable to each such Holder."   Section XVI.J also provides that if the Trustee makes "such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtors or the . . . Trustee and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors or the . . . Trustee, or their respective property."  SA-0073-74.

BEC argues that the Trustee should be permitted to request the Tax Forms pursuant to Section XVI.J of the Plan only "*to the extent those forms are necessary for him to fulfill his withholding and tax reporting requirements*."  BEC Opening Brief at 10.  As discussed above, the purpose for requiring shareholders to provide the Tax Forms is so that the Trust can do just that – fulfill its mandatory tax reporting obligations.[10]  Thus, Section XVI.J of the Plan firmly supports the Bankruptcy Court's ruling.

### B.   The Confirmation Order Authorizes the Trustee to Require Shareholders to Provide the Tax Documents

Second, Paragraph 3 of the Confirmation Order explicitly provides that "the Debtors are required to . . . [comply] with all applicable tax laws with respect to Distributions."  SA-0496.

---

[10]     The Trust also needed this information in the event, and as proved to be the case, that less than 100% of the DNIB shareholders returned the Tax Documents to the Trust.  Without the shareholder information contained in the Tax Forms, the Trust would not be able to identify the holders of shares held *in street name* and would not be able to make subsequent distributions directly to such shareholders because DTC will not make distributions to less than all shareholders.  *See* Section III.C below.

Again, complying with applicable tax laws is precisely the reason that the Trustee required the Tax Forms in the first instance.  BEC tries to downplay the significance of Paragraph 3 by arguing that it applies only to "the Debtors" and not the Trustee because "he was not appointed until several months later."  BEC Opening Brief at 7-8.  However, beginning on August 1, 2016 (71 days before the Plan Effective Date), Mr. Berman served, and continues to serve, as the sole officer of the Debtors and, in that role, he was involved in drafting and negotiating the Plan.[11]  In addition, Mr. Berman was appointed as Trustee just 15 days after the Confirmation Order was entered (not "several months later"); as such, it always was contemplated that the Trustee (and not the Debtors) would administer the Plan, including facilitating the Initial Equity Distribution (and all subsequent distributions) to shareholders, filing tax returns for the Debtors and the Trust, objecting to claims asserted against the Debtors' estates and complying with laws applicable to the Debtors and the Trust.

Mr. Berman, as an officer of the Debtors and in his fiduciary capacity as Trustee of the Trust, has an obligation to comply with all laws applicable to the Debtors and the Trust, including tax laws and regulations.  Indeed, it would be nonsensical to suggest that the Trustee does not have any obligation to comply with such laws solely because Paragraph 3 of the Confirmation Order refers only to "the Debtors."  In any event, Section XVI.J of the Plan, which was approved by the Bankruptcy Court pursuant to the Confirmation Order,[12] explicitly requires

---

[11]     While BEC argues that the Bankruptcy Court's interpretation of the Trust's governing documents is "inconsistent with the intent of the parties at the time the Plan was proposed and confirmed," BEC had *no* involvement in the negotiation of the Plan, the Liquidation Trust Agreement or the Confirmation Order, while the Trustee, on the other hand, was directly involved in drafting each of these documents.  BEC Opening Brief at 7.

[12]     Paragraph 1 of the Confirmation Order provides that the "Plan (as deemed amended by this Confirmation Order) is approved and confirmed under section 1129 of the Bankruptcy Code" and that the "terms of the Plan, and any exhibits or annexations thereto (all of which are subject to further modification by the Debtors, which modifications shall not be inconsistent with the Plan or this Confirmation Order), and any documents necessary in the judgment of the . . .

the Trustee to "comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority." SA-0073.

### C.     The Trust Agreement Also Supports the Bankruptcy Court's Ruling

Third, Section 4.1(f) of the Trust Agreement provides that the Trustee may "request and obtain from the Liquidation Trust Beneficiaries or any other Person Forms W-8 and/or W-9 or such other forms or information relating to the Liquidating Trustee's obligation to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distribute upon receipt of such forms or information." APP-0072. As written, Section 4.1(f) explicitly permits the Trustee: (1) to request from each shareholder (a) a Form W-8 or W-9; **or** (b) other forms relating to withholding requirements; and (2) to condition distributions to shareholders upon the receipt of such documents. Thus, Section 4.1(f) of the Trust Agreement plainly supports conditioning distributions to shareholders upon receipt of the Tax Forms.

The Equity Certification Forms are also necessary so that the Trustee can identify which among the shareholders that held their DNIB shares in street name on the Distribution Record Date are entitled to future distributions pursuant to the terms of the Plan (given that DTC has declined to make such distributions going forward).

In addition to citing to Section 4.1(f) of the Trust Agreement, the Bankruptcy Court noted in its Memorandum Order that the Plan, Confirmation Order and Trust Agreement "govern the rights and responsibilities of the Trustee and the beneficiaries" and that "the Trustee is entitled to exercise his discretion and judgment in construing and carrying out his duties." SA-0682.

---

Trustee to implement, effectuate, and finalize the Plan . . . whether or not specifically contemplated in the Plan, are approved, are in integral part of the Plan, and are incorporated by reference into the Plan and this Confirmation Order." SA-0495-96.

The Trust Agreement itself generally permits the Trustee a significant amount of discretion in administering the Trust:

- "Within the limitations set forth herein, and subject to the oversight provisions set forth in this Agreement, the responsibilities and authority of the Liquidation Trustee shall include, without limitation:   (i) holding and administering the Liquidation Trust Assets . . . (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) performing such acts as are necessary for the administration, resolution and wind-down of the Debtors after the Effective Date . . . and (x) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement." Trust Agreement, Section 2.2.  APP-0066-67.

- "In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust.  Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan: . . . (2) be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in his discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; (3) be expressly authorized and required to . . . make distributions and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan, . . . and (11) be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement."  Trust Agreement, Section 2.4.  APP-0067-68.

As BEC notes in its Opening Brief, principles of contract interpretation require that contract "provisions not be examined in a vacuum, but by reference to other provisions."  BEC Opening Brief at 13.  There can little doubt that the Trust Agreement, especially when read in conjunction with the Plan and Confirmation Order (as was intended), permits the Trustee broad discretion to administer the Plan and to make distributions to stakeholders.  Each of the forgoing

US-DOCS\93489842.5

provisions support the Bankruptcy Court's ruling that the Trustee is acting within his authority in requiring shareholders to provide the Tax Documents.

## IV.   THE BANKRUPTCY COURT APPROPRIATELY DETERMINED THAT THE MECHANICS OF TRUST DISTRIBUTIONS SHOULD BE LEFT TO THE JUDGMENT OF THE TRUSTEE

Finally, BEC argues that the documents that govern the Trust require that all distributions to shareholders that held DNIB stock in street name must be made through DTC. As an initial matter, BEC's interpretation would lead to an inequitable and untenable result for the following reasons:

1. The Trust is required to provide tax identification numbers for each shareholder to the IRS;

2. Pursuant to the Trust's governing documents, the Trustee is permitted to withhold distributions from shareholders that fail to provide tax identification information timely;

3. DTC has confirmed that it is not prepared to make any future distributions to shareholders unless the distribution is made to all shareholders that held their shares in street name as of the August 30, 2016 Distribution Record Date [APP-0170]; and

4. Shareholders that held approximately 24.9513% of the total number of DNIB shares outstanding as of the Distribution Record Date failed to provide the Tax Documents timely and have forfeited future distributions [SA-0754].

As a result of the forgoing, only the Trustee is capable of making (and is prepared to make) further distributions to shareholders. In order for the Trustee to allow distributions to be made through DTC (as BEC demands), the Trustee would have to deliberately disregard the

Trust's reporting obligations and the IRS's tax requirements and permit distributions to be made to all shareholders regardless of whether their Tax Documents were timely provided.

In any event, the provisions of the governing documents to which BEC cites in its Opening Brief describe the types of information upon which the Trustee may rely in administering the Trust (and do not to require that all shareholder distributions be made through DTC), and must be read in conjunction with other provisions of the governing documents requiring the Trustee to comply with the Trust's tax reporting requirements and providing the Trustee significant discretion in administering the Trust.  The full provisions upon which BEC relies are as follows:

- "Except as provided herein, Distributions to Holders of Allowed Claims and Allowed Equity Interests shall be made: (1) *at the addresses* set forth on the respective proofs of claim or interest Filed by such Holders; (2) *at the addresses* set forth in any written notices of address changes delivered to the Post-confirmation Liquidating Trustee after the date of any related proof of claim or interest; (3) *at the address* reflected in the Schedules if no proof of claim or interest is filed and the Post-confirmation Liquidating Trustee has not received a written notice of a change of address; *or* (4) through the transfer agent for BIND Equity Interests."  Plan, Section X.K (emphases added).  SA-0058.

    - This provision ensures that the Trustee either uses the most recent addresses it has for each stakeholder in making distributions or makes distributions through the transfer agent.  Here, shareholders have specifically provided their current addresses to the Trust in the returned Tax Forms.  As such, the Trustee has accurate address information to use in making distributions to them.  In any event, as noted above, DTC is unwilling to make any future distributions to shareholders, leaving the Trustee as the only viable distributor.[13]

---

[13] The Debtors' transfer agent is actually American Stock Transfer & Trust Company, LLC. However, DTC served as the holder of DNIB stock for broker-dealers/Nominees who held such stock in street name for their customers and facilitated the distributions to such broker-dealers/Nominees that were made in December 2016.

US-DOCS\93489842.5

- "Distribution Record Date.  ***The Distribution Record Date shall be August 30, 2016.***
  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of
  Claims that are transferred pursuant to Bankruptcy Rule 3001 or Equity Interests on or
  prior to the Distribution Record Date will be treated as the Holders of those Claims or
  Equity Interests for all purposes.  ***The Post-confirmation Liquidating Trustee shall have
  no obligation to recognize any transfer of any Claim or Equity Interest occurring after
  the Distribution Record Date.***  In making any Distribution with respect to any Claim or
  Equity Interest, ***the Post-confirmation Liquidating Trustee shall be entitled instead to
  recognize and deal with***, for all purposes hereunder, ***only the Entity that***, as to Claims, is
  listed on the proof of claim Filed with respect thereto or on the Schedules as the Holder
  thereof as of the close of business on the Distribution Record Date and, ***as to Equity
  Interests, is listed on the Debtors' books and records or on a record maintained by the
  Debtors' transfer agent as having been the Holder of an Equity Interest on the
  Distribution Record Date***, and upon such other evidence or record of transfer or
  assignment that are actually known to the Post-confirmation Liquidating Trustee as of the
  Distribution Record Date."  Confirmation Order, ¶ 20 (emphases added).   SA-0501-02.

  - BEC conveniently omits the portion of Paragraph 20 of the Confirmation Order
    that provides that the Trustee has no obligation to recognize any stock transfers
    that occurred after the August 30, 2016 Distribution Record Date, which is
    relevant to BEC as it purchased approximately 1.1 million shares of DNIB stock
    after the Confirmation Order was entered on September 26.  APP-0315.[14]  In any

---

[14]     BEC's ultimate goal with respect to this appeal and the myriad other documents it has
filed in this Court and in the Bankruptcy Court is to attempt to ensure that all future distributions
are not made to shareholders as of the August 30 Distribution Record Date, but rather to
shareholders that held DNIB shares as of the October 11 Effective Date, even if they purchased
such shares after August 30.  BEC's scheme depends not only upon prevailing in this appeal, but
also on (i) denial of motions to dismiss filed by DTC and FINRA in the separate action pending
before this Court captioned *B.E. Capital Management Fund LP v Financial Industry Regulatory
Authority, Inc. and The Depository Trust Company*, Case No. 17-00311 (GMS), and (ii)
ultimately prevailing on its claims in that action, requiring FINRA to set an October 11, 2016 ex-
dividend date against its will.  BEC's scheme is also dependent upon DTC (and not the Trustee)
making all further distributions to shareholders because BEC is also seeking a preliminary
injunction preventing DTC from making any future distributions until after this Court has ruled
in the FINRA/DTC litigation, while BEC failed in its many attempts to try to stay the Trustee
from making future distributions.  BEC ultimately seeks to capture a windfall by convincing this
Court that FINRA must set an ex-dividend date of October 11 (even though the Confirmation
Order is clear that the Distribution Record Date is August 30) so that it can capitalize on the 1.1
million shares of DNIB stock that BEC purchased ***after*** the Distribution Record Date for
approximately $0.30 per share as part of what the Bankruptcy Court described as a "risky
investment strategy."  APP-0315-16; SA-0730.  If BEC is successful in this endeavor, BEC
could stand to receive a windfall profit in excess of $750,000 to the detriment of other
shareholders that actually complied with the explicit terms of the Plan and Confirmation Order.

16

event, the portion of the Confirmation Order that BEC does rely upon notes only

that the Trustee "shall be entitled" to recognize only the shareholders that are

listed in the Debtors' books and records (which would include the Tax

Documents)[15] *or on a record maintained by the transfer agent of shareholders **as***

***of August 30, 2016***.  DTC has since confirmed that it has no such list, rather DTC

makes distributions through the Nominees and does not know the identity of

individual shareholders.

- "Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, distributions and deliveries to the Liquidation Trust Beneficiaries ***shall be made at the address of each such Liquidation Trust Beneficiary set forth on the Debtors' books and records*** unless superseded by (i) the address set forth on proofs of claim filed by any such Liquidation Trust Beneficiary or in the books and records of the transfer agent for the Debtors' Equity Interests or (ii) the address provided in connection with a  transfer pursuant to Section 14.1." Trust Agreement, Section 4.2 (emphasis added).  APP-0072.

  - Such "books and records" upon which the Trustee is permitted to rely include

    the addresses that were provided by shareholders in the Tax Documents.

- "In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee ***shall be entitled to conclusively rely on*** (i) the names and addresses set forth in the Debtors' Schedules or filed proofs of claim or (ii) the Debtors' stock transfer agent."  Trust Agreement, Section 9.1 (emphasis added). APP-0076.

  - This provision also speaks only as to the addresses to which the Trustee "shall

    be entitled to rely."  It does not require the Trustee to make distributions

    solely through DTC.

---

[15]     BEC argues that the "Debtors' books and records" cannot include any information provided to the Trustee.  BEC Opening Brief at 16, fn 16.  Yet this position would contradict the Trustee's ability to rely upon updated address information provided by creditors and shareholders "to the Post-confirmation Liquidating Trustee" as set forth in Section X.K of the Plan. SA-0058.

17.    The Plan and Trust Agreement make clear that the Trustee has significant discretion in making distributions.[16]  As such, the Bankruptcy Court appropriately concluded that it would "not disturb Mr. Berman's judgment as to the mechanics of Trust distributions."  SA-0684.

---

[16]    *See, e.g.,* Trust Agreement, Sections 2.2 (cited above), 2.5 (cited above), 4.1(a) ("The Liquidation Trustee, on behalf of the Liquidation Trust, or such other Person as may be designated in accordance with this Agreement, will make distributions to the Liquidation Trust Beneficiaries in accordance with this Agreement and in accordance with the priorities set forth in, and the other provisions of, the Plan."); and 4.1(c) ("Distributions will be made by the Liquidation Trustee in the following order of priority:  (i) first, to satisfy the expenses of administering the Liquidation Trust . . . ; and (ii) second, to make distributions to Liquidation Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.") [APP-0071]; and Plan, Section IX.B ("The Post-confirmation Liquidating Trustee shall, in addition to any powers and authority specifically set forth in other provisions of the Combined Plan and Disclosure Statement or the Liquidating Trust Agreement, be empowered to act on behalf of the Estates and the Post-Effective Date Debtors to . . . (iii) make Distributions in accordance with the Combined Plan and Disclosure Statement, . . . and (vii) exercise such other powers as . . . deemed by the Post-confirmation Liquidating Trustee to be necessary and proper to implement the provisions hereof.") [SA-0052-53].

US-DOCS\93489842.5

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court uphold the Bankruptcy

Court's ruling and grant such other and further relief as may be just and proper.

Dated:  September 27, 2017      Respectfully submitted,
       Wilmington, Delaware


*/s/ Amanda R. Steele*
**RICHARDS, LAYTON & FINGER, P.A**.
John H. Knight (No. 3848)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 498-7701
Email: knight@rlf.com
      steele@rlf.com
      haywood@rlf.com

- and -

**LATHAM & WATKINS LLP**
Peter M. Gilhuly (admitted pro hac vice)
Kimberly A. Posin (admitted pro hac vice)
Amy C. Quartarolo (admitted pro hac vice)
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone:  (213) 485-1234
Fax:  (213) 891-8763
Email:  peter.gilhuly@lw.com
      kim.posin@lw.com
      amy.quartarolo@lw.com

*Counsel for the DNIB Liquidation Trust*

19