# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE DNIB UNWIND, INC. (f/k/a BIND THERAPEUTICS, INC.), | : <br> : <br> : | Chapter 11 <br> Case No. 16-11084 (BLS) <br> (Jointly Administered) |
| Post-Effective Date Debtor. | : | |
| _____ | : | |
| B.E. CAPITAL MANAGEMENT FUND, LP, | : <br> : | Adv. No. 17-50882 (BLS) |
| Appellant, | : <br> : | |
| v. | : | Civ. No. 17-945 (CFC) |
| GEOFFREY L. BERMAN, in his capacity as Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.), | : <br> : <br> : | |
| Defendant/Appellee. | : <br> : | |

Julia B. Klein, KLEIN LLC, Wilmington, Delaware

*Counsel for Appellant*

John H. Knight, Amanda R. Steele, Brett M. Haywood, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Peter M. Gilhuly, Kimberly A. Posin, Amy C. Quartarolo, LATHAM & WATKINS LLP, Los Angeles, California

*Counsel for Appellee*

## **MEMORANDUM OPINION**

February 27, 2019
Wilmington, Delaware

## I.   INTRODUCTION

Presently before the Court is the appeal (D.I. 1) of Appellant B.E. Capital Management Fund LP ("BEC") from a Bankruptcy Court's decision (B.D.I. 694)[1] ("Decision") denying BEC's *Motion for Determination that the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or, Alternatively, is an Impermissible Plan Modification* (B.D.I. 615) ("Motion for Determination"), which sought a determination that Appellee's conditioning of distributions to shareholders upon receipt of certain tax documents and equity certifications is impermissible under the debtors' confirmed plan. Related to the appeal is BEC's pending motion for reconsideration (D.I. 18) ("Motion for Reconsideration") of the Court's Order (D.I. 13) denying BEC's motion for a preliminary injunction, temporary restraining order, and stay of the Decision pending appeal (D.I. 4) ("Emergency Motion"). For the reasons that follow, the Court will affirm the Decision and deny the Motion for Reconsideration as moot.

_____

[1] The docket of the Chapter 11 case, captioned *In re DNIB Unwind, Inc.*, Case No. 16-11084 (BLS) (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *B.E. Capital Management Fund LP v. Berman*, Adv. No. 17-50882 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." BEC's appendix (D.I. 30–31) is cited herein as "APP-__," and Trustee's supplemental appendix (D.I. 26–29) is cited herein as "SA-__."

## II.    BACKGROUND

On September 26, 2016, the Bankruptcy Court entered an order (B.D.I. 457) ("Confirmation Order") confirming debtors' plan of liquidation (B.D.I. 415) ("Plan"), which, *inter alia*, established the Liquidating Trust of DNIB Unwind, Inc. ("Trust") and appointed Appellee Geoffrey L. Berman as trustee ("Trustee"). On October 11, 2016, the Plan's effective date occurred.  On December 15, 2016, Trustee made an initial distribution of $8 million to shareholders, as required under the Plan.  (*See* B.D.I 694 at 3).  Shareholders that held their shares in street name received their distributions through the Depository Trust Company ("DTC"). Thereafter, the Trust's tax professionals advised Trustee that further distributions to the debtors' former shareholders should be conditioned upon submission of certain tax documents, consisting of a Form W-8 or W-9 (the "Tax Forms") and an equity certification form (the "Equity Certification")[2] to be completed by the nominees of DNIB shareholders (the "Nominees") who held their shares in street

---

[2] The Equity Certification requires that each Nominee provide the following: (1) DTC participant name, number, contact name, contact number and email address, and authorized signature; (2) beneficial holder name and account number; and (3) number of shares of CUSIP 05548N 107 that were held by the Nominee for the indicated account as of the Distribution Record Date.  (*See* B.D.I. 627-1, ¶ 8, Ex. 2).  It is Trustee's position that because most DNIB stock in existence on the Distribution Record Date was held in street name, Trustee does not know the identity of each individual shareholder, nor does Trustee know how many shares of DNIB stock each such holder owned as of the Distribution Record Date.  As a result, Trustee required that all Nominees complete the Equity Certification.  (*See* D.I. 9 at 11–12).

name (i.e., through a broker or nominee) (collectively, the "Tax Documents").

(B.D.I. 627-1 at ¶ 6). On February 7, 2017, Trustee sent a notice requesting

submission of same on or before August 7, 2017 (the "Submission Deadline").

(*See* B.D.I. 590). DTC subsequently informed the Trustee that it would not agree

to make any further shareholder distributions if such distributions were made to

less than all shareholders (which would result where at least one shareholder failed

to provide its Tax Documents timely and was deemed to forfeit future distributions

from the Trust). (*See* APP-0170).

On March 22, 2017, BEC filed the Motion for Determination,[3] arguing that

Trustee is mistaken (or at least overly cautious) in his position that the Tax

Documents are necessary; that there may be alternative approaches (such as

seeking a private letter ruling from the IRS); and that requiring submission of this

information unfairly burdens shareholders, placing an unreasonable and

unnecessary condition upon their right to receive their distributions. (B.D.I. 615).

BEC further argues that permitting Trustee to condition distributions on the receipt

of the Tax Documents will result in a substantial number of shareholders forfeiting

---

[3] On March 22, 2017, BEC also filed a complaint in this Court against DTC and
the Financial Industry Regulatory Authority, Inc. ("FINRA"), seeking an order
requiring FINRA to set an October 11, 2016 ex-dividend date. (*See* Civ. No. 17-
311 (CFC), D.I. 1 ("DTC/FINRA Action")). Trustee is not a party to the
DTC/FINRA Action. On October 10, 2018, the parties to the DTC/FINRA Action
filed a Joint Status Report which indicated their agreement that if the Bankruptcy
Court's Decision is affirmed in this appeal, the DTC/FINRA Action should be
dismissed as moot. (*See* Civ. No. 17-311 (CFC), D.I. 26 at 2).

future Plan distributions to which they legally are entitled. (*See* D.I. 4 at 11). A hearing on the Motion for Determination was held on May 31, 2017. (D.I. 4-4).

On July 13, 2017, the Bankruptcy Court issued its Decision denying the Motion for Determination. (B.D.I. 694). The Bankruptcy Court determined that the Plan and Confirmation Order, along with the post-confirmation trust instrument (SA-079-101) ("Trust Agreement"), govern the rights and responsibilities of Trustee and the Trust beneficiaries, and that those governing documents permit Trustee to demand from Trust beneficiaries any forms or information relating to Trustee's obligations to withhold and to condition distributions upon receipt of such forms or information. (B.D.I. 694 at 2). The Bankruptcy Court noted that "Trustee's documentation requests here impose at most a modest burden on the shareholders/beneficiaries," and the Court declined, on a post-confirmation basis, to second-guess the judgment of Trustee in the exercise of his duties where those actions are directly contemplated by the governing documents. (*See id*. at 3).[4]

On July 14, 2017, BEC filed a timely Notice of Appeal with respect to the Decision. (D.I. 1). The same day, BEC initiated an adversary proceeding against Trustee by filing a complaint in the Bankruptcy Court seeking declaratory and injunctive relief (Adv. D.I. 1, 14) ("Complaint"), together with an *Emergency*

---

[4] In declining to substitute its own judgment for Trustee's, the bankruptcy court stated: "[BEC] may be correct that there are other avenues available to the Trustee. But the Trustee is entitled to exercise his discretion and judgment in construing and carrying out his duties." (B.D.I. 694 at 3).

*Motion for Preliminary Injunction and Temporary Restraining Order* (Adv. D.I. 4)

("TRO Motion"). The TRO Motion sought an order enjoining Trustee, through a

final adjudication of the Motion for Determination, from:

> (i) conditioning further distributions to DNIB
> shareholders on the receipt of the required Tax
> Documents; and
>
> (ii) making any further distributions to DNIB
> shareholders until further order of the court.

(*See* Adv. D.I. 4 at 12; D.I. 4 at 1–2). The TRO Motion further sought a stay

pending appeal as alternative relief to the injunctive relief it sought. (*See* Adv. D.I.

4 at 11–12). On July 20, 2017, the Bankruptcy Court promptly set a hearing on the

TRO Motion for August 3, 2017. (*See* Adv. D.I. 9). Notwithstanding BEC's

knowledge that an emergency hearing date had been set by the Bankruptcy Court,

BEC filed the Emergency Motion in this Court on July 25, 2017. (D.I. 4). The

Emergency Motion sought precisely the same relief sought in the TRO Motion: a

preliminary injunction, temporary restraining order, and stay pending appeal of the

Decision. (D.I. 4).[5]

---

[5] Ordinarily, a motion seeking a stay pending appeal of a bankruptcy court's order must be brought first in the bankruptcy court. *See* FED. R. BANKR. P. 8007(a)(1). Only if bringing the motion in the bankruptcy court is impracticable or if the bankruptcy court has failed to rule on the motion seeking a stay may the movant bring the motion to the district court before giving the bankruptcy court an opportunity to consider the relief sought. *See* FED. R. BANKR. P. 8007(b)(2)(A)-(B). Clearly neither condition arose here, as the Bankruptcy Court promptly scheduled the matter for hearing. With respect to these duplicate requests for relief, BEC found it sufficient to state: "[s]hould the Bankruptcy Court grant relief

On August 3, 2017, the Bankruptcy Court held a hearing on the TRO

Motion, and, on August 7, 2017, BEC advised the Court that its request for a stay

had been denied. (D.I. 11). On August 8, 2017, the Court denied the Emergency

Motion. (D.I. 12, 13). On August 14, 2017, BEC filed the Motion for

Reconsideration of same, which is fully briefed. (D.I. 18, 20, 22). The merits of

the appeal are also fully briefed. (D.I. 21, 25, 33). The Court did not hear oral

argument because the facts and legal arguments are adequately presented in the

briefs and record, and the Court's decisional process would not be aided by oral

argument.

## III.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal from the Bankruptcy Court

under 28 U.S.C. § 158. The Decision denying the Motion for Determination is

based on the Bankruptcy Court's interpretation of the Confirmation Order, which

incorporated the Plan and Trust Agreement. The interpretation of an order is a

conclusion of law. *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000)

(bankruptcy court interpretation of confirmation order is conclusion of law). Legal

conclusions of the bankruptcy court are subject to plenary review by the district

---

duplicative of that sought herein, [BEC] will promptly notify this Court." (D.I. 4
at 6).

court and are considered *de novo* on appeal. *In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017); *In re Cont'l Airlines*, 150 B.R. 334, 336 (D. Del. 1993).

## IV. ANALYSIS

On appeal, BEC asserts that the Bankruptcy Court erred as a matter of law in holding that "the Plan, the Confirmation Order and the Trust Agreement all operate to provide Trustee with the authority to demand the tax forms and the Certifications." (D.I. 21 at 1). BEC asserts that this legal conclusion is not supported by the provisions in the operative plan documents upon which the Bankruptcy Court relied. (*Id.* at 7–12). BEC further asserts that the Decision violates principles of contract construction and interpretation because permitting the Trustee authority to condition distributions on the submission of Tax Documents would render all provisions relating to the Debtors' transfer agent meaningless. (*Id.* at 12–14). Trustee has challenged BEC's standing, and therefore the Court will address that issue before turning to the merits of the appeal.

### A. BEC Has Standing to Prosecute the Appeal

Trustee argues that BEC lacks standing to prosecute the appeal. (D.I. 25 at 5–6). "[A]n appellant must qualify as a 'person aggrieved' to be eligible for appellate review of a bankruptcy court order." *Gen. Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 188 (3d Cir. 1993). Thus, "[t]o appeal from an order of a bankruptcy court one must show that the order diminishes one's

7

property, increases one's burdens or impairs one's rights." *Id.* at 188–89. Trustee cites the three elements comprising what the Supreme Court has referred to as "the irreducible constitutional minimum of standing:"

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized … and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" …
> Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not … the result [of] the independent action of some third party not before the court." …
> Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

(D.I. 25 at 6 (second alteration added; other alterations in D.I. 25) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992))). Trustee argues that BEC has suffered no injury in fact. (*Id.* at 6). "BEC (through its Nominee) provided its Tax Documents to the Trust on June 16, 2017 (28 days before BEC filed its Notice of Appeal) and now is entitled to its pro rata share of all future distributions to be made to shareholders under the Plan. As such, BEC does not have a financial interest in the outcome of this appeal." (*Id.*). Conversely, BEC argues that it will be harmed, even if it receives a distribution by virtue of having turned in its Tax Documents. (D.I. 33 at 2–3). "This is so because, by circumventing the transfer agent and [] DTC, the Trustee will deprive [BEC] of the dividends to which [BEC] is entitled from other shareholders on account of shares that it purchased after the

Distribution Record Date by virtue of applicable SEC rules." (*Id.* at 3). Trustee

has conceded that BEC has a financial interest in the outcome of the appeal. (*See*

D.I. 25 at 16 n.14). Thus, BEC has standing to prosecute the appeal.[6]

## B. BEC Failed to Present Evidence Contradicting the Trust's Tax Reporting Obligations or Present Viable Alternatives

At the core of this appeal is a dispute as to whether the information

contained on the Tax Documents is required for the Trust to meet its tax reporting

obligations. BEC argues that the Trust's provision of shareholder tax identification

numbers to the IRS is strictly "optional" (D.I. 21 at 10–11), and Trustee has

consistently asserted that it is not. (D.I. 25 at 7–9). In its answering brief, Trustee

sets out the tax reporting obligations specified by the Trust Agreement,[7] the

specific statutes and related regulations with which the Trust must comply

(including 26 C.F.R. § 1671-4(a)), the required forms, and the instructions

---

[6] Based on the caption of this appeal, BEC also purports to represent, without analysis, a purported class of similarly situated shareholders that failed to timely return the Tax Documents and will forfeit their distributions. Having apparently complied with Trustee's request, it cannot be said that BEC is similarly situated.

[7] Trustee's declaration sets forth the advice that the Trust has received from its tax professionals; specifically, that the Trust's accountant has advised Trustee that the Trust is required to provide the IRS with tax identification numbers for each individual DNIB shareholder entitled to a distribution to the plan. (*See* D.I. 9-1, ¶¶ 5–6). Trustee contends that, because most DNIB stock in existence on the Distribution Record Date was held in street name, Trustee does not know the identity of each individual shareholder, nor does Trustee know how many shares of DNIB stock each such holder owned as of the Distribution Record Date, and as a result, Trustee required that all Nominees complete the Equity Certification. (*See id.* at 11–12).

governing completion and submission of same.[8] BEC has suggested that, as an

alternative to the reporting requirements of 26 C.F.R. § 1671-4(a), Trustee may

comply with 26 C.F.R. § 1.671-4(a) by solely reporting DTC's tax identification

number (instead of the tax identification number of each shareholder). (*See* D.I. 21

at 12 n.11). Trustee argues this alternative is not viable because (1) the

instructions to Form 1041 are clear that Trustee must provide a tax identification

number for "the person(s) to whom the income is taxable" and (2) the income of

the Trust is taxable to each grantor/shareholder and not to DTC.[9] (D.I. 25 at 8).

---

[8] The Trust Agreement requires the Trustee "to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a)." (APP-0064; APP-0384). According to Trustee, specific tax provisions, namely 26 U.S.C. § 6012(a)(4) and 26 C.F.R. § 1.671-4(a), require the Trustee to file a Form 1041, "U.S. Income Tax Return for Estates and Trusts," on behalf of the Trust. (*See* D.I. 25 at 7–8). Under the Form 1041 reporting method, the regulations require the Trust to report taxpayer identification numbers in accordance with the directions for Form 1041. *See* 26 C.F.R. § 301.6109-1(c). The instructions to Form 1041 provide (at pages 12–13) that (A) where the trust is a grantor trust, the Trustee is required to "fill in only the entity information of Form 1041" and to show "dollar amounts" "only on an attachment to the form"; and (B) the attachment to Form 1041 must include "[t]he name, identifying number, and address of the person(s) to whom the income is taxable" (i.e., each shareholder). (APP-0380).

[9] *See* Trust Agreement, § 8.2(b) ("Thus, the Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.") and § 13.2 ("[T]he [Trustee] shall prepare and distribute a statement setting forth the information necessary for each Liquidating Trust Beneficiary to determine its share of items of income, gain, loss, deduction or credit for United States federal income tax purposes.") (APP-0076); Plan, Art. XVI.J ("[E]ach Holder of an Allowed Claim or Allowed Equity Interest that is to receive a Distribution under the Combined Plan and Disclosure Statement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on

BEC also suggests that Trustee may, in the alternative, comply with the requirements contained in 26 C.F.R. § 1.671-4(b)(3). (*See* D.I. 21 at 12 n.11). Trustee argues that this alternative is not viable because 26 C.F.R. § 1.671-4(b)(3) requires that the Trust file Forms 1099. (D.I. 25 at 8–9). "Under the 1099 reporting method, the Treasury Regulations similarly require the Trust to report all items of income paid to the Trust by all payors and to identify 'each grantor or other person treated as an owner of the trust as the payee.'" (D.I. 25 at 9 (quoting 26 C.F.R. § 1.671-4(b)(3)(ii)(A))). Accordingly, "Trustee can comply with these requirements only if the shareholders that held their shares in street name identify themselves by providing the Tax Documents." (D.I. 25 at 9). BEC offers no response to these tax reporting requirements in its reply. (*See* D.I. 33).

The Court finds no basis to question that the information contained in the Tax Documents is required in order for the Trust to fulfill its tax reporting obligations. BEC has provided no evidence to the contrary, and it points to no evidence in the record on appeal in support of its assertion that there are viable alternatives to the reporting requirements upheld by the Bankruptcy Court.[10]

---

such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.") (SA-0073).

[10] Indeed, BEC's Managing Director testified that he has not consulted with an accountant on these issues. (APP-0317).

## C. Operative Plan Documents Authorize Trustee to Condition Distributions on Submission of Tax Documents

The Bankruptcy Court stated that "[t]he Plan and Confirmation Order, along with the post-confirmation trust instrument, govern the rights and responsibilities of the Trustee and the [Trust] beneficiaries." (B.D.I. 694 at 2). The Bankruptcy Court cited the following specific provisions in support of this statement: (i) Plan at Art. XVI.J; (ii) Confirmation Order at ¶ 3; and (iii) Trust Agreement at § 4.1(f). (*Id.* at 2–3). BEC argues on appeal that the particular provisions cited by the Bankruptcy Court do not support its conclusion. (D.I. 21 at 7–8). Trustee argues that the governing documents, including but not limited to the provisions cited by the Bankruptcy Court, support the Decision to deny relief. (D.I. 25 at 9–14). The Court addresses each provision in turn.

### i. Plan, Art. XVI.J

Article XVI.J of the Plan provides:

> J. Withholding and Reporting Requirements
>
> In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors and Post-confirmation Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim or Allowed Equity Interest that is to receive a Distribution under the Combined Plan and Disclosure Statement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder

12

by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtors and the Post-confirmation Liquidating Trustee have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations. The Debtors or [T]rustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim or Allowed Equity Interest complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtors or [T]rustee make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtors or the [T]rustee and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors or the [T]rustee, or their respective property.

(SA-0073–74). Article XVI.J of the Plan explicitly requires Trustee to "comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority" and permits Trustee to "require, as a condition to receipt of a Distribution, that the Holder of an … Allowed Equity Interest complete and return a Form W-8 or W-9, as applicable to each such Holder." (*Id.*). BEC argues that Article XVI.J of the Plan provides no authority for the Trustee to request Tax Documents because there are "alternatives" to the Trust's tax reporting method. (D.I. 21 at 8–11). "Read as a whole, [Article XVI.J] permits Trustee to 'require, as a condition of receipt of a Distribution' that the recipient 'complete and return a Form W-8 or W-9'" only "*to the extent those forms are necessary for him to fulfill his withholding and tax reporting requirements.*" (*Id.* at 9–10 (emphasis

in original)).  Relying entirely on the subheading – "Withholding and Reporting Requirements" – BEC argues that the Trustee should be permitted to request the Tax Documents only where necessary to withholding and tax reporting requirements.  (*Id.* at 10).  According to BEC, "if those forms are not a requirement, i.e., optional, this Plan provision does not authorize the Trustee to condition distributions on their completion and receipt." (*Id.*).  "[I]f there are alternative[] [reporting methods], the W-9 Form, by definition, is optional." (*Id.* at 11).

The limitation advanced by BEC is not supported by a plain reading of Article XVI.J.  Even if the Plan contained such a limitation, as discussed above, BEC has provided no evidence that the reporting requirements are merely "optional," and BEC points to no evidence in the record on appeal in support of its assertion that there are viable alternatives to the reporting requirements.  The plain language of the Plan provides that Trustee may require that eligible shareholders return a completed Tax Form to the Trust by a date certain to receive distributions from the Trust.  In short, Article XVI.J of the Plan supports the Bankruptcy Court's ruling.

### ii.    Confirmation Order, ¶ 3:

Paragraph 3 of the Confirmation Order provides:

> Compromise of Controversies.  For the reasons stated herein, the Plan constitutes a good faith, arm's length compromise and settlement of all Claims or controversies

> relating to the rights that a Holder of a Claim or Equity
> Interest, or any assignees thereof, may have with respect
> to any Allowed Claim or Equity Interest or any
> Distribution to be made or obligation to be incurred
> pursuant to the Plan, and the entry of this Confirmation
> Order constitutes approval of all such compromises and
> settlements. *For the avoidance of doubt, the Debtors are*
> *required to make all required withholding payments and*
> *[comply] with all applicable tax laws with respect to the*
> *Distributions.*

(SA-0496, ¶ 3 (emphasis added)). BEC argues that this paragraph pertains not to

Trustee but rather to creditors that are giving up their claims for distributions. (D.I.

21 at 8). BEC argues that, while this provision imposes an obligation on the

Debtors, it does not confer any affirmative right on the Trustee or authority to

require the Tax Documents. (*See id.*). BEC further argues, because Trustee "was

not appointed until several months later," that Paragraph 3 applies only to "the

Debtors" and not Trustee. (*See id.* at 7–8). According to Trustee, this argument is

nonsensical as it was always contemplated that Trustee would administer the Plan.

(*See* D.I. 25 at 11–12).

The Court agrees with Trustee. Paragraph 3 of the Confirmation Order

explicitly provides that "the Debtors are required to … [comply] with all

applicable tax laws with respect to Distributions," and complying with applicable

tax laws is the reason that the Trustee is requiring the Tax Documents. Moreover,

the record reflects that: as of August 1, 2016 (71 days prior to the Plan's effective

date); Trustee, Mr. Berman, served, and continues to serve, as the sole officer of

the Debtors; Mr. Berman was appointed as Trustee 15 days after the Confirmation

Order was entered (not "several months later"); and therefore the Trustee (not the

Debtors) must administer the Plan, including facilitating the Initial Equity

Distribution (and all subsequent distributions) to shareholders, filing tax returns for

the Debtors and the Trust, and complying with laws applicable to the Debtors and

the Trust. As an officer of the Debtors and in his fiduciary capacity, Trustee has an

obligation to comply with all laws applicable to the Debtors and the Trust,

including tax laws and regulations. BEC's argument that Trustee does not have

any obligation to comply with such laws solely because Paragraph 3 of the

Confirmation Order refers only to "the Debtors" is unavailing.

### iii.  Trust Agreement, § 4.1(f)

Section 4.1(f) of the Trust Agreement provides:

> Tax Identification Numbers. The Liquidation Trustee is
> authorized to request and obtain from the Liquidation
> Trust Beneficiaries or any other Person Forms W-8
> and/or W-9 or such other forms or information relating to
> the Liquidation Trustee's obligations to withhold as the
> Liquidation Trustee may reasonably request, and the
> Liquidation Trustee may condition any distribution to
> any Liquidation Trust Beneficiary or other distributee
> upon receipt of such forms or information.

(SA-0088). BEC argues that § 4.1(f) provides Trustee with authority to demand

the Tax Documents only to the extent necessary for the Trustee to meet his

obligation to withhold. (*See* D.I. 21 at 11–12). Because Trustee will not be

withholding taxes from distributions to Trust beneficiaries, BEC argues, § 4.1(f)

16

does not grant Trustee authority to condition distributions on submission of the Tax Documents. (*See id.*). Trustee counters: "As written, Section 4.1(f) explicitly permits the Trustee: (1) to request from each shareholder (a) a Form W-8 or W-9; **or** (b) other forms relating to withholding requirements; and (2) to condition distributions to shareholders upon the receipt of such documents. Thus, § 4.1(f) of the Trust Agreement supports conditioning distributions to shareholders upon receipt of the Tax Forms." (D.I. 25 at 12).

In addition to citing to § 4.1(f) of the Trust Agreement, the Bankruptcy Court noted in its Memorandum Order that the Plan, Confirmation Order, and Trust Agreement "govern the rights and responsibilities of the Trustee and the beneficiaries" and that "Trustee is entitled to exercise his discretion and judgment in construing and carrying out his duties." (B.D.I. 694 at 2–3). Trustee further argues that principles of contract interpretation require that contract "provisions not be examined in a vacuum, but by reference to other provisions." (*See* D.I. 25

at 13).  Citing §§ 2.2[11] and 2.4[12] of the Trust Agreement, Trustee asserts that he is

permitted a significant amount of discretion in administering the Trust.  *Id.*  When

---

[11] Section 2.2 of the Trust Agreement provides in relevant part:
> Within the limitations set forth herein, and subject to the oversight provisions set forth in this Agreement, the responsibilities and authority of the Liquidation Trustee shall include, without limitation: (i) holding and administering the Liquidation Trust Assets ... (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) performing such acts as are necessary for the administration, resolution and wind-down of the Debtors after the Effective Date ... and (x) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

(APP-0066–67).

[12] Section 2.4 of the Trust Agreement provides in relevant part:
> In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust.  Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan: ... (2) be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in his discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; (3) be

read in conjunction with the Plan and Confirmation Order, the Court agrees with the Bankruptcy Court's conclusion that Trustee is granted broad discretion in administering the Plan and making distributions, including requesting and obtaining the Tax Documents from beneficiaries.

### D. Decision Does Not Render Plan Provisions Meaningless

BEC argues that by permitting the Trustee to condition distributions on the Tax Documents, the Bankruptcy Court condoned the Trustee's manual distribution mechanism and thus rendered meaningless all the provisions in the Plan and Trust Agreement relating to the transfer agent, DTC.[13] According to BEC, such an interpretation would be contrary to principles of contract construction and interpretation. (*See* D.I. 21 at 13 (citing *Pac. Emplrs. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (holding that a court

---

expressly authorized and required to … make distributions and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan, … and (11) be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

(APP-0067–68).

[13] Debtors' transfer agent is American Stock Transfer & Trust Company, LLC. However, DTC served as the holder of DNIB stock for broker-dealers/Nominees who held such stock in street name for their customers and facilitated the distributions to such broker-dealers/Nominees that were made in December 2016. (*See* D.I. 25 at 15 n.13).

will not interpret one provision of a contract in a manner which results in another provision being annulled))). Trustee disputes BEC's argument that the operative documents require that all distributions to shareholders that held DNIB stock in street name must be made through DTC. (D.I. 25 at 14–15). Trustee argues such an interpretation would lead to an inequitable and untenable result for several reasons, including: the Trust is required to provide tax identification numbers for each shareholder to the IRS; the Trustee is permitted under the Trust Agreement to withhold distributions from shareholders that fail to timely provide tax identification information; DTC has confirmed that it is not prepared to make any future distributions to shareholders unless the distribution is made to all shareholders that held their shares in street name as of the August 30, 2016 distribution record date (APP-0170); and shareholders that held approximately 24.9% of the total number of DNIB shares outstanding as of the Distribution Record Date failed to timely provide the Tax Documents and have forfeited future distributions. (D.I. 25 at 14–15). As a result of the foregoing, only the Trustee is capable and prepared to make further distributions to shareholders, and BEC's argument must be rejected. (*Id.*).

The Decision does not render provisions pertaining to the transfer agent illusory or meaningless. BEC points the Court to the following: (i) Plan at Art. X.K; (ii) Confirmation Order at ¶ 20; (iii) Trust Agreement at § 4.2; and (iv) Trust Agreement at § 9.1. But, as set forth below, the Court agrees that these provisions

describe the types of information upon which the Trustee may rely in administering the Trust and do not require all shareholder distributions to be made through DTC.

### i. Plan, Art. X.K

BEC argues that the Bankruptcy Court's interpretation of the Plan renders Article X.K of the Plan illusory because that section provides that "Distributions to … Allowed Equity Interests shall be made … through the transfer agent for BIND Equity Interests." (D.I. 21 at 14). The full text of Article X.K provides:

> Except as provided herein, Distributions to Holders of Allowed Claims and Allowed Equity Interests shall be made: (1) *at the addresses* set forth on the respective proofs of claim or interest Filed by such Holders; (2) *at the addresses* set forth in any written notices of address changes delivered to the Post-confirmation Liquidating Trustee after the date of any related proof of claim or interest; (3) *at the address* reflected in the Schedules if no proof of claim or interest is filed and the Post-confirmation Liquidating Trustee has not received a written notice of a change of address; *or* (4) through the transfer agent for BIND Equity Interests.

(SA-0058 (emphasis added)). Trustee argues this provision ensures that the Trustee either uses the most recent addresses it has for each stakeholder in making distributions or makes distributions through the transfer agent. The Court agrees. Article X.K provides that Trustee may make distributions to holders of claims and shareholders in a number of different ways, *including* through the transfer agent, but does not require it.

BEC argues that permitting the Trustee to require the Tax Documents would render Paragraph 20 of the Confirmation Order meaningless, which provides that "[i]n making any Distribution with respect to any Claim or Equity Interest, the ... Trustee shall be entitled ... to recognize and deal with, for all purposes hereunder, only the Entity that ... is listed on the Debtors' books and records or on a record maintained by the Debtors' transfer agent as having been the Holder of an Equity Interest on the Distribution Record Date." (D.I. 21 at 15). The full text of Paragraph 20 provides:

> Distribution Record Date. ***The Distribution Record Date shall be August 30, 2016.*** Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 or Equity Interests on or prior to the Distribution Record Date will be treated as the Holders of those Claims or Equity Interests for all purposes. ***The Post-confirmation Liquidating Trustee shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Distribution Record Date.*** In making any Distribution with respect to any Claim or Equity Interest, ***the Post-confirmation Liquidating Trustee shall be entitled instead to recognize and deal with***, for all purposes hereunder, ***only the Entity that***, as to Claims, is listed on the proof of claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and, ***as to Equity Interests, is listed on the Debtors' books and records or on a record maintained by the Debtors' transfer agent as having been the Holder of an Equity Interest on the Distribution Record Date***, and upon such other evidence or record of transfer or assignment that are actually

> known to the Post-confirmation Liquidating Trustee as of
> the Distribution Record Date.

(SA-0501–02 (emphasis added)). Trustee argues that BEC has conveniently

omitted that portion of Paragraph 20 that provides that the Trustee has no

obligation to recognize any stock transfers that occurred after the August 30, 2016

Distribution Record Date, which is relevant to BEC as it purchased approximately

1.1 million shares of DNIB stock after the Confirmation Order was entered on

September 26. (*See* D.I. 25 at 16 (citing APP-0315)). Trustee further argues that

the portion of the Confirmation Order that BEC does rely upon notes only that the

Trustee "shall be entitled" to recognize only the shareholders that are listed in the

Debtors' books and records (which would include the Tax Documents) *or* on a

record maintained by the transfer agent of shareholders *as of August 30, 2016*.

(*Id.*). DTC has since confirmed that it has no such list; rather, DTC makes

distributions through the Nominees and does not know the identity of individual

shareholders. (*Id.*). The Court agrees with the Trustee that the Decision does not

render Paragraph 20 of the Confirmation Order meaningless.

### iii.  Trust Agreement, § 4.2

BEC argues that the Decision renders meaningless § 4.2 of the Trust

Agreement, which governs Delivery of Distributions, and states that "distributions

and deliveries to the Liquidation Trust Beneficiaries shall be made at the address of

each such Liquidation Trust Beneficiary set forth on the [records of] the transfer

agent for the Debtors' Equity Interests." (*See* D.I. 21 at 15). The full text of § 4.2 of the Trust Agreement provides:

> Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, distributions and deliveries to the Liquidation Trust Beneficiaries *shall be made at the address of each such Liquidation Trust Beneficiary set forth on the Debtors' books and records* unless superseded by (i) the address set forth on proofs of claim filed by any such Liquidation Trust Beneficiary or in the books and records of the transfer agent for the Debtors' Equity Interests or (ii) the address provided in connection with a transfer pursuant to Section 14.1.

(APP-0072 (emphasis added)). Trustee argues that the "books and records" upon which the Trustee are permitted to rely include the addresses that were provided by shareholders in the Tax Documents. The Court agrees.

### iv.    Trust Agreement, § 9.1

BEC argues that the Decision renders meaningless § 9.1 of the Trust Agreement governing "Identification of Liquidation Trust Beneficiaries" because this section directs the Trustee to "conclusively rely on the names and addresses set forth [i]n [the records of] the Debtors' stock transfer agent." (D.I. 21 at 16). The full text of § 9.1 of the Trust Agreement provides:

> In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee *shall be entitled to conclusively rely on* (i) the names and addresses set forth in the Debtors' Schedules or filed proofs of claim or (ii) the Debtors' stock transfer agent.

24

(APP-0076 (emphasis added)). Trustee argues that this provision speaks only about the addresses on which the Trustee "shall be entitled to rely," and does not require the Trustee to make distributions solely through DTC. (D.I. 25 at 17). The Court agrees.

## V.    CONCLUSION

Trustee has been advised by its tax professionals that the Trust is required to provide the IRS tax identification numbers for each beneficiary of the Trust, including all shareholders entitled to a distribution under the Plan. Although BEC clearly disagrees with the tax advice provided by the Trust's tax professionals, BEC offers only its own opinion that there are other ways in which Trustee may satisfy his obligations. BEC has provided no contradictory expert opinion or testimony from a tax professional to support its allegation that the Tax Documents are not required and suggests no viable alternative to the Equity Certification. The Bankruptcy Court's Decision is supported by the Plan documents and violates no rules of contract construction and interpretation. The Court therefore finds no error in the Decision denying BEC's Motion for Determination and will affirm the Bankruptcy Court's Decision. Accordingly, BEC's Emergency Motion is rendered moot.

The Court will issue a separate Order consistent with this Memorandum Opinion.